FILED
2023 JUL 27 PM 12:38
CLERK
U.S. DISTRICT COURT

Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RAYMOND MAX SNYDER | Case No.: 4:23-cv-00056-PK |
| Plaintiff, | |
| vs. | AMENDED COMPLAINT |
| JUDGE ALEX GOBLE | |
| Individually and in His Official Capacity as a Justice of The Sixth Judicial District Court, of Sevier County, Utah | |
| American Family Insurance, American Family Insurance's attorney, Stewart Harmon; Lauara Ann Lisk; Shawn B. Meador; Woodburn & Wedge; Detective Brandt Deaton Sevier County, Sheriff's Office; and Sevier County Attorney, Casey Jewkes. | |
| and John and Jane Does 1-10. | |
| Defendant(s) | |

The instances of improper actions against Plaintiff referenced in this Complaint began the day Plaintiff was married in 2001. See Exhibit VVV, the Premarital Agreement altered by

PLEADING TITLE - 1

Defendant Lauara Ann Lisk. The improper actions have and are continuing as of the filing of this Complaint. Consequently, the result is voluminous supporting documentation.

This claim can be determined under any of the following, 1) the violation of Plaintiff's rights guaranteed by the United States Constitution, specifically, the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah; 2) the violations of Rule 11 and 60 by all defendants; 3) under Rule 60(d) Plaintiff has brought this action as "an independent action under Federal Rule of Civil Procedure 60(d)(1) for relief from a judgment and divorce decree entered on September 11, 2021 following Plaintiff's Rule 60 motion brought before the district court on December 23, 2020 which the Nevada district court declined to address, and Plaintiff's  Hearing Brief For the October 11, 2023 Hearing, and Supporting Argument for Rule 60(b)(1) Through 60(b)(6), Rule 60(d)(3), NRS 199.210, NSCR 2.11, and the Due Process Clause of the 14th Amendment…, For Vacating the Divorce Decree (BRIEF), provided herewith as Exhibit AA which the district court improperly disallowed, See Exhibit TTT(1): or 4) more than one of these.

In the Utah case, Judge Goble declined to recognize Plaintiff's timely filed Rule 60 motions stating they were not timely. Judge Goble's Oder violated Plaintiff's constitutional rights and Rule 11. Plaintiff also brings this case under Rule 60(d) as an independent action.

This Complaint concerns the continuing improper actions of the defendants subsequent to Plaintiff's previous Complaints.

Plaintiff, pursuant to Rule 8(a), Fed.R.Civ.P., complains and alleges causes of action against Defendant(s) as follows:

## PRELIMINARY STATEMENT

PLEADING TITLE - 2

This is a civil rights action in which the Plaintiff, Raymond Max Snyder (Max), seeks relief for the Defendant(s) violation of his rights guaranteed by the United States Constitution, specifically, the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah. Plaintiff seeks damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the Fifth and Fourteenth Amendments of the Constitution of the United States and arises under the law and statutes of the State of Utah.

This Complaint involves continuing Rule 11 violations by defendants and is brought under the laws of the United States, the state of Utah, and the state of Nevada.

This is also a Racketeer Influenced and Corrupt Organizations Act, RICO complaint brought under 18, U.S. Code Chapter 96, NRS § 207.400 of the state of Nevada, and 76-10-1603 of the Utah Code.

## I.     The Parties to This Complaint

### A.  The Plaintiff

Raymond Max Snyder,
Address                          PO Box 69
                                 Aurora, Utah 84620
County                           Sevier
Telephone Number                 (801) 641-6844
Email  Address                   maxsnyder@yahoo.com

### B.  The Defendant(s)

Judge: Alex Goble

PLEADING TITLE - 3

| | |
|---|---|
| Address | Sixth Judicial District Court |
| | 845 East 300 North |
| | Richfield Utah 84701 |
| County | Sevier |
| Telephone Number | (435) 896-2700 |
| Email Address | 6thsevierdocs@utcourts.gov |
| | |
| American Family Insurance | |
| Address | 6000 American Parkway |
| | Madison, WI 53783 |
| | 800-692-6326 |
| | twelp@amfam.com |
| Stewart Harman | |
| Address | Plant Christensen & Kanell |
| | 250 E 200 S., Suite 340 |
| | Salt Lake City, UT 84111 |
| | (801) 363-7611 |
| | sharman@pckutah.com |
| | |
| Lauara Ann Lisk | |
| Address | 427 Mesa Street |
| | West Wendover NV 89883 |
| | (801) 891-7260 |
| | Lauara@yahoo.com |
| | |
| Detective Brandt Deaton, | Sevier County Sheriff's Office |
| Address | 835 East 300 North, Suite 200 |
| | Richfield, Utah 84701 |
| | (435) 896-2600 |
| | |
| Casey Jewkes, | Sevier County Attorney |
| Address | Sevier County Attorney |
| | 835 E 300 N, Ste. 300 |
| | Richfield, UT 84701 |
| | (435) 896-2675 |
| | |
| Shawn B. Meador | |
| Address | Woodburn & Wedge |
| | 6100 Neil Rd. |
| | PO Box 2311 |
| | Reno, NV 89505 |
| | (775) 688 3000 |
| | smeador@woodburnandwedge.com |

PLEADING TITLE - 4

Woodburn & Wedge
Address                          Woodburn & Wedge
                                 6100 Neil Rd.
                                 PO Box 2311
                                 Reno, NV 89505
                                 (775) 688 3000


And John and Jane Does 1-10

## II.   Basis of Jurisdiction

A.  This suit is against a State official(s) (a 1983 Claim) against Judge Alex Goble (Judge Goble), Sevier County Sheriff Detective, Brandt Deaton (Detective Deaton), the Sevier County Attorney, Casey Jewkes (Mr. Jewkes), and against American Family Insurance (AmFam), AmFam's attorney, Stewart B Harman (Mr. Harman), Lauara Ann Lisk (Lauara), and Lauara's attorney, Shawn B. Meador (Mr. Meador) for aiding and abetting and accessories to the state official(s). This action arises under the United States Constitution and federal law, particularly under the provisions of the Fifth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

B.  This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

C.  The claims made in this Complaint occurred and arose in the States of Utah, North Carolina, and Nevada, and in the District of Utah. Venue is therefore proper under 28 U.S.C. § 1391, 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

D.   Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proved at trial.

PLEADING TITLE - 5

E.  This Court has the authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

F.  This Court also has jurisdiction over any pendant State claims Plaintiff may wish to bring, or has brought, pursuant to 28 U.S.C. § 1367, and 28 U.S.C. § 1391.

G.  This Court has jurisdiction over any pendant State claims Plaintiff may wish to bring under 18 U.S. Code Chapter 96 - Racketeer Influenced And Corrupt Organizations.

H.  This Court has jurisdiction over pendant State Claims Plaintiff may wish to bring under the State of Nevada, and the state of Utah's Rule 11, or Federal Rule of Civil Procedure Rule 11.

**III.    Statutes of Limitations.**

   **A.    Breach of a written contract. 6 years.**

   **B.      NRS 11.190(1)(a) and (b), within 6 years.**

   1.   Within 6 years:

   (a)  Except as otherwise provided in NRS 62B.420 and 176.275, an action upon a judgment or decree of any court of the United States, or of any state or territory within the United States, or the renewal thereof. Attorneys for  Woodburn and Wedge violated Nev. Justice Ct. R. Civ. P 11 by drafting false orders. The statute of limitations is six years.

   (b)  An action upon a contract, obligation, or liability founded upon an instrument in writing…

   (c)  The Divorce Decree, was obtained by violations of Rule 11 and NSCR Rule 2.11. A six year statute of limitations applies.

This action is upon a Nevada Divorce Decree recorded September 19, 2020, from the

Fourth Judicial District Court. This claim qualifies under this Nevada 6-year statute.

**C.      Theft and Embezzlement NRS 205.300 and 205.0832. four years.**

**IV.      RACKETEERING BROUGHT UNDER NRS 207.47018, and U.S. CODE CHAPTER 96.**

       **C.      NRS 207.400 Unlawful acts**

Nevada Revised Statutes Chapter 207 - Miscellaneous Crimes NRS 207.520

 **Statute of** - **Limitation of actions**. Universal Citation: NV Rev Stat § 207.520

(2021) A proceeding under NRS 205.322 or 207.400 may be commenced at any

 time within 5 years after the conduct in violation of the section occurs.

       **(i)      NRS 207.400 Unlawful acts; penalties.**

1. It is unlawful for a person:

(a) Who has with criminal intent received any proceeds derived, directly

or indirectly, from racketeering activity to use or invest, whether directly

or indirectly, any part of the proceeds, or the proceeds derived from the

investment or use thereof, in the acquisition of:

(1) Any title to or any right, interest, or equity in real property; or

(2) Any interest in or the establishment or operation of any enterprise.

       **(ii)      NRS 207.520 - Limitation of actions**. Universal Citation: NV Rev Stat § 207.520 (2021) A criminal action or proceeding under NRS 205.322 or 207.400 may be commenced at any time within 5 years after the conduct in violation of the section occurs.

**(iii)     NRS 207.360 "Crime related to racketeering" defined**. "Crime related to racketeering" means the commission of, attempt to commit, or conspiracy to commit any of the following crimes:

9. Taking property from another under circumstances not amounting to robbery;

10. Extortion;

13.  Forgery;

21. Receiving or transferring a stolen vehicle;

24. Receiving, possessing, or withholding stolen goods valued at $250 or more;

26. Obtaining possession of money or property valued at $250 or more, or obtaining a signature through false pretenses;

27. Perjury or subornation of perjury;

28. Offering false evidence.

33. Any violation of NRS 205.377… Multiple actions involving fraud... in

the course of the occupation.

NRS 171.080, Theft NRS 205.0832(c), Four years;

### NRS 207.390 – Racketeering activity defined.

Racketeering activity means engaging in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

1.     Offenses of this statute include the following: Lauara in concert with her sons, Adam Lisk (Adam) and Ryan Lisk (Ryan), took Max's portion of property (loans to Adam) under circumstances not amounting to robbery, NRS 207.360(9), (26), (27), and (28). Lauara's attorney, Shawn B. Meador (Mr. Meador) aided and abetted the theft.

PLEADING TITLE - 8

a.      The first crime, Max's and Lauara's loans to Adam, were secretly placed into two of Lisk's LLCs bankruptcies, Old Mill Forestry, and Carol Lynn Properties, in 2010 from which Adam laundered money. Lauara and her oldest son, Ryan, were aware and assisted. Ryan was also a creditor and his company, Advanced Clearing and Grinding, was listed as a creditor in Adam's bankruptcies. Lauara was listed as the sole creditor on both bankruptcies for the then married couple's, Lauara and Max, loans to Adam.

b.      The second crime came in or before 2015 when Adam secretly repaid his mother, Lauara, the loans during the marriage and Adam and Ryan assisted Lauara in breaching her fiduciary duty to inform Max and kept the money hidden. Adam repaid Ryan who was a creditor in both bankruptcies. Max first learned of the secret repayments following Lauara's deposition on March 26, 2019, in Reno, Nevada, and Max's investigation through December 2019.

c.      Defendants, and their attorney in North Carolina, Christopher M. Theriault (Chris), for Lauara and her sons, Ryan and Adam, allowed Max to sue Adam, Ryan, and Lauara in North Carolina knowing the loans to Adam had been secretly repaid to Lauara.

d.      The third crime came at the divorce trial in August 2020. Following Max disclosing that the loans to Lauara had been secretly repaid to Lauara, Lauara and her Woodburn & Wedge attorneys, Shay Wells (Mr. Wells), Bronagh Kelly (Ms.

PLEADING TITI

Kelly), and Shawn Meador (Mr. Meador) insisted the loans be awarded to Max.

Mr. Meador and Mr. Wells are senior partners in the firm of Woodburn & Wedge,

thus implicating the firm as criminal organization under RICO.

Defendants Shawn B. Meador and Shay Wells' are shareholders in and on the

board of directors of Defendant Woodburn and Wedge.

When an attorney is a member of the board of directors of the enterprise, the
attorney, either directly or indirectly, plays "some part in directing" the
enterprise's affairs, and therefore participates in the operation or management of
the enterprise. Even if the board of directors only makes hiring decisions, the
attorney can choose managers who will act in the attorney's interests as a board
member. if the defendant-lawyer was on the corporate board of directors, or had
an equity interest in the enterprise, these facts should be prima facie evidence of
operation or management in the enterprise.' Reves, v. Ernst & Young 170, 113 S
Ct 1993 at 1170 (emphasis omitted)

Under 18 U. S. C. § 1962(c), judgment is warranted in favor of Plaintiff, and

against Shawn B. Meador, Shay Wells, Bronagh Kelly, and Woodburn and

Wedge, on all of Plaintiff's alleged RICO violations, for the sums stated in his

Complaint, resulting from the actions of employees Shawn B. Meador, Shay

Wells, and Bronagh Kell, in violation of 18 U.S.C. § 1962(c).

The United States Supreme Court found in *Reves v. Ernst & Young*, 507 U.S. 170

(1993), stated,

"A provision of the Racketeer Influenced and Corrupt Organizations Act (RICO),
18 U. S. C. § 1962(c), makes it unlawful "for any person employed by or
associated with [an interstate] enterprise ... to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs through a pattern of
racketeering activity .... " After respondent's predecessor, the accounting firm of
Arthur Young and Company, engaged in certain activities relating to valuation of
a gasohol plant on the yearly audits and financial statements of a farming
cooperative, the cooperative filed for bankruptcy, and the bankruptcy trustee
brought suit, alleging, *inter alia,* that the activities in question rendered Arthur
Young civilly liable under § 1962(c) to petitioner holders of certain of the

cooperative's notes. Among other things, the District Court applied Circuit precedent requiring, in order for such liability to attach, "some participation in the operation or management of the enterprise itself"; ruled that Arthur Young's activities failed to satisfy this test; and **granted summary judgment in its favor on the RICO claim**. Agreeing with the lower court's analysis, the Court of Appeals affirmed in this regard."

"The "operation or management" test is consistent with the proposition that liability under § 1962(c) is not limited to upper management. "Outsiders" having no official position with the enterprise may be liable under § 1962(c) if they are "associated with" the enterprise and participate in the operation or management of the enterprise." This would include attorney Matthew Howell and his firm Fillmore Spencer which entered the foreign judgment in Utah.

e.      The fourth crime came in August 2020, after the divorce trial when Lauara and Mr. Meador, knowing the loans were uncollectable, threatened to go after Max for half the loan value if Max appealed the Divorce Decree.

f.      Lauara's North Carolina attorney, Chris, acknowledged that Lisk had thirteen judgments going back to 2003 and up until Max's deposition in 2019. The judgments against Lisk began before Max lent Lisk money.

g.      Chris admitted that Lisk had millions and millions in judgments against him, from 2003 and up until Max's deposition in 2019.When Max lent Adam money, he was unaware of he judgments against his wife's son.

h.      Meador acknowledged in his August 23, 2021, Utah declaration, that Lauara's son Adam was judgment-proof.

PLEADING TITLE - 11

i.  Meador acknowledged Adam would not repay. This fits the definition of racketeering in NRS 207.390(33) as defined by NRS 205.377.

j.  Lauara was a principal and participated with both her sons in the RICO violations.

k.  The attorneys of the firm of Woodburn & Wedge, Mr. Meador, Mr. Wells and Ms. Kelly,  aided and abetted Lauara's coverup of her involvement, in the repayment of the loans to Adam, by taking action not directly related to the crime itself, for the purpose of facilitating its success.

l.  Mr. Meador, Mr. Wells and Ms. Kelly, and Woodburn's separate actions against Max amount to racketeering as defined by NRS 207.390 and include the crimes defined by NRS 207.360(9) & (13) & (24) & (26) & (27) & (28) and (33).  Mr. Meador, Mr. Wells and Ms. Kelly, and Woodburn fit the term "Enterprise" defined by NRS 207.380(1).

m.  Adam's, Ryan's, Mr. Meador's, Ms. Kelly's, Mr. Wells', Woodburn's, Lauara's Utah attorney, Matthew Howell's (Mr. Howell), and Lauara's racketeering all engaged in two or more crimes. Adam's, Ryan's, and Lauara's are defined above. Mr. Meador, Ms. Kelley, Mr. Wells', Mr. Howell's, and Woodburn's crimes are those of aiding and abetting, accessories after the fact, conspiring to and forging orders, fabricating evidence, embezzling from Max, suborning perjury, offering false evidence, and others defined herein below. Mr. Meador, Ms. Kelly, Mr.

PLEADING TITLE - 12

Wells, and Woodburn are listed on the Trial Statement used to draft the false inclusions in the divorce decree. Mr. Meador, Ms. Kelly, Mr. Wells, and Woodburn are listed in the heading to the November 10, 2020, Order to Show Cause Hearing Order that contains fabricated evidence, perjury, non-collateral rulings, etc. Mr. Meador, Ms. Kelly, Mr. Wells, and Woodburn are all listed in the heading of the September 22, 2022, Order to Reduce Outstanding Sums to Judgment, which they drafted, and contains, fabricated evidence, perjury, non-collateral rulings, etc.

n.   Lauara's, Adam's, Ryan's, Mr. Meador's, Ms. Kelley's, Mr. Wells', Mr. Howell's, and Woodburn's crimes:

(1) ended with similar results, defrauding, extorting and embezzling funds and property from Max;

(2) were done with the same intents stated in (1) above.

(3)  founded on the same intent, the unlawful acquisition of funds, assets, and property from Max;

(4) They followed the same patterns; each intended to steal from Max.

(5) They targeted the same victim, Max.

(6) They utilized similar accomplices; Lauara, Adam, Ryan, Mr. Meador, Ms. Kelly, Mr. Wells, Mr. Howell, Filmore, and Woodburn.

PLEADING TITLE - 13

(7)  Adam and Ryan were associated with Old Mill Forestry and Carol Lynn Properties, companies that Lauara allowed Adam to place the couple's loans to Adam listing Lauara as the sole creditor. As confirmed below, Old Mill Forestry was a corrupt business as defined by RICO. Adam, Ryan, and Lauara acted on behalf of Old Mill Forestry and Carol Lynn Properties to steal money from Max that did not involve burglary.

(8) utilized similar methods of commission; unlawful legal actions of forgery, embezzlement, threats, fabrication of evidence, perjury, and subornation of perjury.

(9) have distinguishing characteristics that make them interrelated. The characterization and stamp of each crime were to deprive Max of his property for the benefit of each Defendant. They were not isolated incidents.

o.    Perjury and subornation of perjury are civilly actionable under NRS 207.400 and NRS 207.360(27).

In *State v. Busscher* 407 P.2d 715 (1965), the Nevada Supreme Court upheld a lower court jury finding attorney Busscher had willingly and intentionally suborned the perjury of his client in a divorce case and reinstated with direction to enter judgment thereon and pronounce sentence.

Nevada's anti-racketeering statutes, NRS 207.350 through NRS 207.520, inclusive, were enacted in 1983

[2] and are patterned after the federal Racketeer Influenced and Corrupt Organizations, or "RICO," statutes, 18 U.S.C. §§ 1961-1968, Like their federal

counterparts, Nevada's anti-racketeering statutes provide for a civil cause of action for injuries resulting from racketeering activities under which a plaintiff may recover treble damages, attorney's fees and litigation costs. See NRS 207.470.[3], *Hale v. Burkhardt* Nevada Supreme Court, 764 P.2d 866 (1988).

Attorney, Matthew Howell (Mr. Howell), and his firm, Fillmore Spencer (Filmore), aided and abetted Lauara's attorneys, Mr. Meador, Ms. Kelly, Mr. Wells, and Woodburn, in the racketeering and Lauara's fiduciary breach of duty to Max by hiding these facts, and by entering the foreign judgment in Utah which resulted from the racketeering.

Lauara's attorneys forged orders and other recorded legal documents. The attorneys also allowed Lauara to amend the couple's tax returns without Max's participation thus extorting money from Max in violation of NRS 205.463 and NRS 207.360. This is racketeering.

Lauara and her attorneys offered false, fabricated evidence. This is racketeering.

Defendant Lauara Ann Lisk began her claim for the couple's motorhome against American Family Insurance in Nevada. Plaintiff continued the claim and repairs were made to the RV in Nevada. American Family Insurance with its agents, its attorney, Stewart Harman, (Mr. Harman), his firm, its agents, and its witnesses including Lauara Ann Lisk, committed the same offenses and meet all the requirements to be considered RICO defendants under Nevada and Federal Law cited above. This claim is brought under 18, U.S. Code Chapter 96, and 76-10-1603 of the Utah Code.

## V.   YOUNGER / ROOKER-FELDMAN DOCTRINE

The district courts have violated Plaintiff's civil rights, have allowed pleadings from Defendants that violated Rules 11 and 60 and have entered orders and filed pleadings in

PLEADING TITLE - 15

violation of Rule 11. The Defendants have fabricated evidence and suborned the perjury of witnesses. The *Younger* or the *Rooker-Feldman* Doctrine does not apply. This Court is free to decide all issues Max has brought herein.

## STATEMENT OF THE CLAIM

**VI.** **Breach of Contract and Violations of Rule 11 by American Family Insurance and the Sixth Judicial District Court.**

1.   On November 2, 2020, Plaintiff, Raymond Max Snyder (Max), filed a Complaint against, American Family Insurance (AmFam), in the Sixth Judicial District Court in and for Sevier County, Richfield, Utah, for breach of contract, breach of implied covenant of good faith, loss of use, fraud… with a paid Jury Demand for, Case No. 200600078. The case was assigned to Judge Marvin Bagley (Judge Bagley).

2.   The case proceeded to a hearing on December 20, 2022, at which Judge Bagley instructed each party to prepare an order and that he would sign one. See Appendix Volume XX Exhibit 3, 6505-6507, the court minutes of the hearing, #346.

3.   Max prepared an order and furnished it to the district court on December 30, 2022. See Appendix Volume XX, Exhibit 7, 6527-6554. Note, Volume XX is Max's Rule 60(d) Motion and its Exhibits entered with the Sixth District Court on May 23, 2022, titled, Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment.

4.   AmFam prepared an order and furnished it to the district court on December 30, 2022. Judge Bagley signed AmFam's order on January 19th, 2022. See Appendix Volume XX, Exhibit 4, 6508-6528.

5.      On January 20, 2023, Plaintiff filed an objection to the Order prepared by AmFam and signed by the district court stating it violated Rule 60 and violated his civil rights. See Appendix Volume XX Exhibit 2 at 6504.

6.      On January 23, 2023, Plaintiff filed a civil rights complaint against Defendant AmFam and Judge Bagley in the U.S. District Court in and for Utah, Case No. 4:23-cv-00007-DN-PK.

7.      On January 24, 2023, as a result of Plaintiff filing the civil rights complaint, Defendant, AmFam, filed an ex-parte motion to be allowed to file an overlength Rule 83 motion to have Plaintiff declared a vexatious litigant.

8.      A hearing was set to hear AmFam's Motion to have Max declared a vexatious litigant, and to argue the judgment signed by Judge Bagley which was confirmed to be only a "**proposed judgment**". A scheduling hearing was held on March 6, 2023, to schedule a hearing to hear and argue AmFam's Motion to have Plaintiff declared a vexatious litigant, and the "proposed judgment." AmFam proposed to Max that it would withdraw its vexatious litigant motion against Max if Max would withdraw his objection to the "proposed judgment." Max declined. AmFam asked Judge Bagley if he was aware that Max had filed against him in federal court. Judge Bagley was not and recused himself from the case. See Appendix Volume XX Exhibit 5, 6520-6523.

9.      Judge Alex Goble was assigned to replace Judge Bagley. Max filed an objection against Judge Goble citing that the judge was related to the county attorney who was prosecuting Max on a charge of auto theft and was related to Jason Goble whom Max had the Sheriff trespass following which Jason Goble returned to Max's property and stole items from Max's property. The Sheriff's Office refused to pursue calling the theft a **civil issue**. Judge Goble declined to

PLEADING TITLE - 17

recuse himself. A scheduling hearing was held on May 8, 2023, before Judge Goble to schedule a hearing to hear AmFam's vexatious litigant motion against Max, and the "proposed judgment" signed by Judge Bagley. AmFam's attorney, Stewart Harman (Mr. Harman) falsely stated that the hearing was scheduled to hear a "new proposed order that was needing to be filed." See Appendix Volume XX Exhibit 2 6492-6496. The clerk printed out the fake proposed order and wrote "Proposed" across the top, and handed it to Max. Mr. Harmon claimed it had been filed with the court and provided to Max in an email. Max's email, Appendix Volume XX Exhibit at 6497, and the court docket at 6504 confirm it had not. Mr. Harman lied to the court about the authenticity of the document and that it was to be argued. Mr. Harmon violated Rule 11. Judge Goble declined to allow argument on the January 19, 2023 "proposed order", thus violating Max's due process.

10.     A review of Max's Order presented to the district court, and the documents it referenced, confirmed that AmFam violated Rule 11, committed fraud on the court and fabricated evidence, then included it in its Second Motion for Summary Judgment entered by the district court. Judge Goble declined to hear the argument on Judge Bagley's January 19, 2023, "proposed order" which was confirmed as "proposed" only. Mr. Harman stated that if the Judge signed his never-before-seen proposed judgment "that if the (new, unseen) proposed judgment is signed by the court the Rule 83 motion (the vexatious motion against Max) may be withdrawn." See Appendix Volume XX Exhibit 2, 6493-6496. See the scheduling hearing minutes 6502-6503. Judge Goble declined to sign the new and fake, proposed judgment presented by Mr. Harmon, which violated Rule 11. Judge Goble improperly allowed the "proposed judgment" that was to be argued, then set argument for the Rule 83 motion for September 29, 2023. This violated Max's due process rights guaranteed by the 14th Amendment. By attempting to

substitute a false proposed judgment and entering it with the court, Mr. Harmon violated Rules 11 and 60(b).

11.     On or about May 22, 2023, Max filed a pleading titled Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment, with the Sixth District Court in Richfield Utah, Case No 200600078, citing the violations of his civil rights and the Rule 60 violations by AmFam. See Appendix Volume XX 6549-6486. The Motion's Exhibits are included.

12.     On May 30, 2023, Max filed a Complaint with the Sevier County Sheriff's Office, and the Sixth Judicial District Court through his attorney. The Complaint filed with the Sheriff included Exhibit AA, a pleading titled, Hearing Brief For The October 11, 2023 Hearing, And Supporting Argument For Rule 60(b)(1) Through 60(b)(6), Rule 60(d)(3), NRS 199.210, NSCR 2.11, and the Due Process Clause of the 14th Amendment…, For Vacating the Divorce Decree as Exhibit AA. Exhibit AA, (BRIEF). The BRIEF included exhibits. The complaint with the Sheriff's Office, Exhibit AA, with supporting Exhibits, confirmed on page 9 of the complaint, that the division of property in the divorce was decided on a document provided to the divorce court a month following the divorce. The document was presented to the divorce court, a month following the divorce trial, as Exhibit A and swapped out with Defendant, Lauara's, original Trial Exhibit A. See Exhibit AA 158-162 for complete details. Lauara and her attorney Mr. Meador violated Rules 11 and 60.. Max confirmed for the Sheriff where the documents were located in his Complaint Exhibit AA--- at No. 115 and Nos. 142 to 146. The Court and the County Attorney should have dismissed its Complaint against Max at that time. They declined. See Exhibit III.

PLEADING TITLE - 19

13.     On June 23, 2023, Judge Goble filed his order, Rule 60 Decision Denying Plaintiff's Motion for Relief From Judgment. See Exhibit JJJ.

14.     In his order Judge Goble confirmed that 1) The Ruling Order was signed on January 19, 2023, and 2) complained about Max's motion and exhibits being over 300 pages in length. See Exhibit 2 pg. 1. Note, Appendix Volume XX is Max's Rule 60 Motion referenced above. Judge Goble declined to review AmFam's order presented at the May 8, 2023, scheduling hearing though he stated on pg. 2 of his order in No. 7. "a new judicial assignment was made to discuss the outstanding judgments in the case and the Defendant submitted a Proposed Judgment the same day." This was the swapped-out proposed judgment that violated Rules 11 and 60. The January 19, 2023, order was the "proposed order" that was to be argued and was set to be argued by the court. Mr. Harman tried to insert an improper document in its place in violation of Rules 11 and 60.

Judge Goble's refusal to consider Max's order or allow Max to argue the January 19, 2023 "proposed order" as scheduled, violated Max's 14th Amendment due process rights. A review of Max's proposed Order Appendix Volume XIX Exhibit 7 6527-6545, and its Exhibit 8, Amended Plaintiff's Response to Defendant American Family Insurance's Second Motion for Summary Judgment… 6546-6568 and its accompanying Exhibits AA(E), Amended Declaration of Plaintiff Raymond Max Snyder… 6570-6583 and the rest of the Exhibits, from 6584 through 6771, the remainder of Max's Rule 60(d)… Motion to Vacate the Judgment signed by Judge Goble confirms that AmFam committed fraud on the court, fabricated evidence, and violated Rule 11 and that Max should have prevailed, and his Order signed by the district court.

15.     A review of Max's Order confirms that AmFam verbally committed to having the motorhome taken to the manufacturer in Indiana to be repaired. Then, following committing to

PLEADING TITLE - 20

allowing the vehicle to be repaired by the manufacturer claimed they had found a qualified shop in the Las Vegas area, Findley, and sent Max to Findlay for the repairs. AmFam breached its contract with Max. When Findlay was unable to complete the repairs, AmFam told Max they had never heard of Findlay and refused to complete the repairs to the RV or to pay for the items stolen from the RV under the homeowner's policy. This is a breach of contract under the **Parol Evidence Rule** and Max cited that in his proposed Order. Parol evidence is more fully explained below.

16.     Judge Goble ordered that Max had not timely filed his Rule 60 motions within 90 days. Max had filed the first Rule 60 motion against the January 19, 2023 "proposed order" within a day of the order being signed by Judge Bagley. Max filed his Rule 60(d) motion titled Notice of Motion to Vacate Judgment for URCP Rule 60(d) Fraud on the Court and Rules 60(b)(1) Mistake Etc., Rule 60(b)(6) Other Reason to Vacate Judgment with the Sixth District Court in Richfield Utah, Case No 200600078, on May 22, 2023, See Appendix Volume XX 6486, 14 days following Judge Goble not allowing Max to argue the "proposed order" at the May 8, 2023 scheduling hearing. Both were well under the 90-day period Judge Goble states. It needs to be noted that Rule 60(d) motions have no statute of limitations.

17.     Judge Goble threatened and falsely accused Max of violating Rule 11 stating on pg. 8. of his order, "The Plaintiff is advised against attempting to assemble a conflict of interest then assert that the "6th District is prejudice against the Plaintiff." Max filed an FRCP Rule 11(c)(1)(A) Motion with Mr. Harmon only, allowing Mr. Harman the 21 days provided by the Rule to correct his Rule 11 violations. Mr. Harman's response was, "*I appreciate you sending this over to me. I will certainly respond to your frivolous motion if or when it is filed. I do appreciate you providing me another exhibit to our Rule 83 Motion against you. Good afternoon*

PLEADING TITLE - 21

*and have a wonderful weekend."* See Exhibit KKK. Mr. Harman confirmed the Court's prejudice against Max and the fact that the court would sign another vexatious litigant action against Max in violation of URCP Rule 83. Mr. Harman declined to respond to Max's Motion when he filed it. Max filed his Rule 11 Motion under URCP Rule 11(c)(1)(A) giving Mr. Harman 21 days to withdraw his Rule 11 violations. Mr. Harman refused. Under URCP Rules 11(c)(1)(B) and 11(c)(2) Mr. Harman and his firm should be sanctioned and ordered to pay Max's damages.

To prevent Max from protecting himself in the entry of a foreign judgment against Max, Mr. Howell and Judge Faust filed a vexatious litigant Order having Max declared vexatious. The Utah Court of Appeals found in *Stand v. Nupetco*, No. 20151016-CA 03-30-2017.

> Rule 83 authorizes a court to impose restrictive orders on vexatious pro se litigants. The purpose of such orders is to curb the litigant's vexatious conduct. To that end, the order may, for example, require the litigant to obtain legal counsel before proceeding in the pending action or to obtain leave of court before filing pleadings, motions, or other papers. *See* Utah R. Civ. P. 83(b), (d). But before imposing such an order, the court must make two findings. First, it must find by clear and convincing evidence that "the party subject to the order is a vexatious litigant." *See id.* R. 83(c)(1)(A). Second, the court must find, again by clear and convincing evidence, that "there is no reasonable probability that the vexatious litigant will prevail on the claim"—that is, the litigant's claim pending before the court. *See id.* R. 83(c)(1)(B). In other words, the court cannot impose a vexatious litigant order on a pro se litigant whose claim before that court enjoys a reasonable probability of success.

Max enjoyed more than a reasonable probability of prevailing. Judge Faust incorrectly signed an order finding Max vexatious in violation of Rule 83(C)(1)(A) and 83(c)(1)(B). Max has recited this to Mr. Harman however, Mr. Harman seems to be certain Judge Goble will violate Max's rights and sign a second order.

18.     Judge Goble had continued Judge Bagley's allowing AmFam's attorney Mr. Harman, and its star witness, Lauara, to violate Rules 11 and 60 and to fabricate evidence. See Case No. 4:23-cv-00007-DK-PK.

PLEADING TITLE - 22

19.     Judge Goble failed to consider Max's Rule 60 motion and entered AmFam's Order that contained several false findings. In signing Mr. Harman's Order, Judge Goble violated Max's 5th and 14th Amendment rights and violated Rule 11. This Court is not precluded from ruling against Judge Goble's Rule 11 and Rule 60 violations by the *Younger* of *Rooker-Feldman* doctrine.

**VI.     Sevier County Sheriff's Office, Detective Brandt Deaton, Fabricating Charges of Theft Against Plaintiff.**

20.     Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 19. as though fully set forth herein.

21.     Judge Goble took over the case against Max filed by his relative, Sevier Count Attorney, Casey Jewkes. See Exhibit LLL. The County's charge against Max was for second decree auto theft for the theft of an "operable vehicle", brought by, Detective Brandt Deaton (Detective Deaton) of the Sevier County Sheriff's Office, See Exhibit LLL.

22.     Max had provided his attorney with an audio tape that confirmed that Lauara agreed that the vehicle she had accused Max of stealing was Max's. The audio tape also confirmed that in 2017 Lauara's son, Adam, and his brother Ryan, claimed they had the funds to repay Max and Lauara's loans to Adam but that Adam's business partners came first. Max sent his attorney a second confirmation of the transcripts absent the video to confirm the first production to Mr. Jeweks. See Exhibit RRR. Lauara had allowed her son Adam to place the couple's loans into his bankruptcy in 2010, and list Lauara as the sole creditor. Lauara was secretly repaid the loans in 2015 without Max's knowledge.

23.     Detective Deaton brought the charges against Max for stealing an "operable vehicle" knowing the vehicle was not "operable" after Lauara had trespassed, removed it, and vandalized it. The vehicle was insured in Max's name and had Max's property inside. Detective

PLEADING TITLE - 23

Deaton knew Max had repaired it to move it from the neighbor's property to his to make further repairs and remove his personal property. Detective Deaton also knew Max had called the Sheriff prior to moving the vehicle and the Sheriff stated it was a civil matter and the Sheriff's Office would not get involved. Max notified the Sheriff's Office after he moved the vehicle and left it on his property in open sight. See Exhibit MMM. Max again provided this information to the Sevier County Attorney through his attorney. See Exhibit QQQ.

24.     Max confirmed he was jailed and charged by Detective Deaton in October 2020 in retaliation for Max exposing that Sgt. Crane of the Sevier County Sheriff's Office had covered up several instances of Max being poisoned by his ex-wife, Lauara in 2018 in the complaint against the Sevier County Sheriff and Sgt. Crane, Case No 4:23-cv-00007. The 2005 F350 that Max was accused of stealing had been kept and insured at Max's home in Sevier County since it was purchased. It was insured in Max's name and located on his property up to and until May 5, 2021, seven months after Detective Deaton arrested Max. Lauara paid the insurance premiums on the vehicle. At the time of Max's arrest, Lauara had not removed Max from the policy. Max was still insured to drive the F350 for another month. Following Lauara having Max arrested for stealing the vehicle, Lauara renewed the policy on November 5, 2020, insuring Max to drive the vehicle for another six months through May 5, 2021. See Exhibit EEE. Detective Deaton declined to consider this.

25.     Like the Sevier County Sheriff before him, who had told Max the issue was **civil** and that Max could retrieve the truck, Detective Deaton confirmed to Max in a phone conversation on July 7, 2023, that moving the truck was a **civil matter** yet Detective Deaton had handcuffed, arrested, placed Max in jail and filed the 2nd-degree auto theft charges against Max. In the same conversation, Detective Deaton claimed that Lauara and her sons Adam and Ryan's

theft of over $2,000,000 from Max, assisted by her attorney, Mr. Meador, was also a **civil**. Detective Deaton refused to get involved with the theft by Max's ex-wife, her attorney, and her sons because it was a **civil matter**. Case No. 2307-089, Exhibit BBB, Lauara's "voluntary" polygraph, Exhibit FFF, and the fact that Lauara's attorney Mr. Meador and Lauara's sons participated in the theft and its coverup confirm this was not a **civil matter**. Max furnished this information to the Sevier County Attorney through his attorney. See Exhibit QQQ.

26.     More than five months later, on March 31, 2021, the trial judge who drafted the divorce decree, Exhibit B,  confirmed that Max did not steal the vehicle. See Exhibit UUU, hearing transcripts from March 31, 2021, pg. 18:20-19:1. This has been previously provided to the Sheriff's Office.

27.     Unlike the fabricated charges of theft against Max, the theft from Max was not by Lauara alone and was not a civil issue. The theft was by Lauara, Adam, Ryan and Mr. Meador. All benefited from the theft. Mr. Meador from attorney fees from assisting Lauara and Adam and Ryan in laundering money from the bankruptcies. Mr. Meador was an accomplice to the theft as defined by Nevada statutes NRS 195.020 and NRS 195.030. Mr. Meador resided in and filed his motions in Nevada. The case was **not civil**.

28.     The vehicle theft charges against Max were fabricated. This Court is not precluded from ruling on them by the *Younger* of *Rooker-Feldman* doctrine.

29.     In Sevier County the Sheriff's office and the County attorney allowed individuals to steal large sums from Max calling it a **civil matter** and refusing to pursue them. In Sevier County, these same people then set Max up to move a vehicle, fabricated evidence of theft against Max, and acknowledged it was **civil**, charged Max, and are attempting to have him sent

PLEADING TITLE - 25

to prison for several years. In Sevier County, a **civil issue versus felony issues** and the law are defined and applied differently to Max than to anyone else.

30.     Judge Goble was assigned the auto theft case against Max, Case no 201600283 FS. A scheduling hearing was held on May 30, 2023. See Exhibit PPP. It was confirmed at the hearing that the vehicle was an issue in the couple's divorce. Max's attorney confirmed that Max had prevailed on appeal and asked Judge Goble for time to review the divorce matter. Judge Goble declined, dismissed the diversion agreement that was to run until December 2023, and put the case on regular track setting a pretrial hearing for August 22, 2023. This Court is not precluded by the *Younger* of *Rooker-Feldman* doctrine, from dismissing all charges against Max.

**VIII.   Theft of $2.055,405.32 From Max By Defendants Lauara Ann Lisk, Ryan Lisk, Adam Lisk, and Lauara's Attorneys for Woodburn & Wedge, including Attorney Shawn B. Meador.**

31.     Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 29. as though fully set forth herein.

.     In Sevier County, following a Grama records request for a copy of police reports, the reports are reviewed by the County Attorney for legal issues prior to release. Max has requested and paid for the officer reports of several of his complaints with the Sevier County Sheriff's Office. Several they have refused to provide. See Exhibit OOO. Detective Deaton told Max his complaint against Lauara, Mr. Meador, and Adam was civil and refused to bring an action against these individuals for their thefts. Max requested and paid for a copy of Detective Deaton's report, then called every day to see when the report would be released. Each time Max was told the County Attorney had not released it yet. The Sevier County Attorney had reviewed and released Max's Complaint on July 21, 2023, he declined to release the report until after Max

PLEADING TITLE - 26

had filed the original complaint against him on July 25, 2023. See Exhibits OOO and SSS. The report is provided in Exhibit SSS.

32.     Exhibit BBB and its Exhibits 1-14, and Exhibit FFF confirm that Lauara was secretly repaid the loans she and Max made to her son and that Lauara told Sgt. Crane of the Sevier County Sheriff's Office that she had been repaid the loans. See Exhibit BBB, page 6:13-20 referring to Max's Brief Appendix Volume XIX 5516.

33.     The Exhibits in Max's "BRIEF", Exhibit AA, are voluminous and have been provided to the Court in Max's Complaints against Sixth District Court Judge Marvin Bagley et al, Case No. 4:32-cv-00007. These exhibits were filed on June 21, 2023. They were also filed in Max's Complaint against Sixth District Judge Robert Faust et al, Case No 4:23cv-00008 as Exhibit AA Max's "BRIEF" and its Exhibits, Exhibit A through 37 including Appendix Volume XIX, numbers 1 through 9(c). Referring back to these two cases, Judge Goble's threatening Max for violating Rule 11 for Max claiming the Sixth District Court is prejudiced against him is a baseless threat confirming that the Court is prejudiced against him. Judge Goble's Order makes no mention of AmFam's and its attorney, Mr. Harman's numerous Rules 11 and 60 violations.

34.     Max provided Detective Deaton with his pleading titled Notice to Strike Defendant's Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions Against Attorney Shawn B. Meador... See Exhibit BBB. Max's pleading was a response to a pleading drafted by Mr. Meador for his client, Lauara, titled Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions against Attorney Shawn B. Meador… and included a Motion for Sanctions against Max. Mr. Meador's and Lauara's pleading included the affidavit of Lauara's son, Adam, to whom the couple had made sizeable loans. See Exhibit BBB's Exhibit 5. In the recent June 20, 2023 pleading, Mr. Meador, Lauara, and Adam claimed the loans that Lauara had

previously told Sgt. Crane, of the Sevier County Sheriff's Office, had been repaid Lauara have not been repaid. These three individuals now claim the loans were still outstanding, and that Adam had listed them in his latest Bankruptcy filed 06/09/2021. Adam's attorney for this most recent bankruptcy was the same attorney he used for the Carol Lynn Properties and Old Mill Forestry bankruptcies in which he listed Max and Lauara loans to him. Adam's latest bankruptcy was also filed and in the same court. Because of Adam's deception in his latest bankruptcy the trustee converted the bankruptcy from a Chapter 11 to a Chapter 7 on 12/15/2021. Adam's attorney quit forcing Adam to continue representing himself. The loans from Max and Lauara are not listed in Adam's bankruptcy See Exhibit BBB's Exhibit 7.

Mr. Meador filed his pleading titled, Opposition to Nevada Justice Ct. R. Civ. Rule 11 Motion for Sanctions against Attorney Shawn B. Meador… on *May 20, 2023*. See Exhibit BBB's Exhibit 5.  Mr. Meador had previously been provided documentation confirming that Lauara had been repaid the loans. The last time he was provided the documentation confirming the loans had been repaid to Lauara was on <u>May 30, 2023</u>, less than 3 weeks before Mr. Meador claimed the loans had not been repaid. Max again provided the information to Mr. Meador in Max's HEARING BRIEF FOR THE OCTOBER 11, 2023 HEARING, AND SUPPORTING ARGUMENT FOR RULE 60(b)(1) THROUGH 60(b)(6), RULE 60(d)(3), NRS 199.210, NSCR 2.11, AND THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT…, FOR VACATING THE DIVORCE DECREE. See Max's Exhibit AA, filed with the district court and Mr. Meador on May 30, 2023, and also provided to the Sheriff's office and the County Attorney in Complaint No. 2010-044 on May 30, 2023, See Exhibit III referencing Appendix Volume XIX 9(a), 6496-6508, and Appendix Volume XIX Part 5, 6202. The Volume XIX Part 5, 6201-6209 is the bankruptcy court's CHAPTER 11 POST-CONFIRMATION REPORT PURSUANT

TO ORDER CONFIRMING PLAN, showing each class of creditor, including Lauara. V XIX 6202 is the confirmation page signed by Adam and his attorney. Appendix XIX Part 5, 6201-6209, are the confirmation pages showing the schedule of repayments to each class of creditors. Lauara was listed as a Class 8. V XIX 6206 confirms these creditors had been paid. The signature page, V XIX 6202, is also provided for convenience as Exhibit BBB's Exhibit 9. Mr. Meador, Lauara, and Adam have continued to intentionally violated Rules 11 and 60.

35.    On June 20, 2023, Mr. Meador filed with the divorce court a motion titled, Opposition to Nevada Justice Ct. R Civ P. Rule 11 Motion for Sanctions Against Attorney Shawn B. Meador and His Firm Woodburn and Wedge and Countermotion to Find That Mr. Snyder has Repeatedly Violated Rule 11 of the Nevada Rules of Civil Procedure. See Exhibit BBB's Exhibit 5. In his motion, Mr. Meador included the affidavit of Lauara's son, Adam, to whom the couple made the loans that Mr. Meador, Lauara, and Adam were now claiming had not been repaid to Lauara. *See* Exhibit BBB's Exhibit 5. Exhibit BBB is Max's complaint to the Sheriff's Office and Detective Deaton, which included Max's pleading titled Notice to Strike Defendant's Opposition to Nevada Justice Ct. R. Civ. P. Rule 11 Motion for Sanctions… which confirmed the loans to Lauara's son Adam had been secretly repaid to Lauara.

The couple's loans to Adam began in 2004 and were verbal. *See* Adams's Affidavit, Exhibit BBB's Exhibit 5, pg. 1 No. 2. It was agreed, from the beginning, that the loans were to Adam and not to any company owned by Adam.

36.    Max's "BRIEF" Exhibit AA, previously furnished to this Court, confirms that at trial Lauara insisted the loans to Adam be awarded to Max. See Exhibit BBB's Exhibit 11, pg. 98:10-99:17 and pg. 144:3-9, transcripts from day three of the divorce trial. Lauara asked the court to award the couple's notes to Adam, to Max <u>at the value Max claimed they were worth</u>.

PLEADING TITLE - 29

The district court obliged and awarded the notes to Max. Then, following trial Lauara and Mr. Meador threatened to come after Max for half the loans if Max filed an appeal. *See* Max's "BRIEF Exhibit AA" Appendix Volume XIX Part 5 6212-6215 provided herewith as Exhibit 8 of Exhibit BBB. This amounts to extortion by Mr. Meador and his client. To date, the combined loans of $210,000 and $440,000 are worth $2.055,405.32. See Exhibit NNN.

37.     In Adam's Affidavit, located in Exhibit BBB's Exhibit 5, Adam's statement on pg. 2:11-15 confirm that he informed his mother (Lauara) that he was including the couple's loans in his business bankruptcies. However, at Lauara's deposition on March 26, 2019, Lauara testified that her son asked her if he could list the loans in his bankruptcies. *See* Max's "BRIEF" Exhibit AA and No. 47 referring to the supporting exhibit, Lauara deposition. *See* Max's "BRIEF" Exhibit AA, Volume XIX 6133- 6138, pg. 6134. For the Court's convivence, they are also provided herewith as Exhibit 6 of Exhibit BBB. In her deposition, Lauara stated on pg. 157:12-20,

> "Well, it really doesn't matter. I know what he told me. We had not signed those agreements for the notes yet. And we did in 2012, I believe. But he said that he was going to claim we had lent him on his bankruptcies, he wanted to know if that was okay, but that he wasn't really not going to pay. And I said sure."

At pg. 160:12-15 Lauara testified,

> "he didn't ask me or tell me what he was filing. He asked if he could put the debt that he owed us in his bankruptcy, and I said sure. He said, "But Mom, I will still pay you."

When the notes were drafted in 2012 they had already been in Adam's bankruptcies for 2 years. The notes were to Adam not to any company he owned or to any bankruptcy as Lauara and Adam claim. There was never a mention of a statute of limitations. Adam needed Lauara's and Max's permission to place the funds in his bankruptcy. He only received Lauara's. Lauara and her son confirm Max was intentionally kept out of the know. Adam asked Lauara in 2010 if

PLEADING TITLE - 30

it was alright to put the loans that began in 2004 into his bankruptcy. The bankruptcy was six years after the "verbal" loans began and two years before the loans were confirmed in writing. Nothing was mentioned about the loans being for Adam's company bankruptcies in the loan drafts, drafted two years after the couple's loans were placed in Adam's bankruptcies. *See* Adam's Affidavit pg. 2, No. 4. Lauara never revealed this to Max. *See* pg. 160:23-25 of her deposition. Adam and Mr. Meador assisted Lauara in breaching her fiduciary duty to Max, keeping all this from Max and listing only Lauara as a creditor. It was all a plan to extort the money from Max.

38.     Adam, Lauara, and Mr. Meador claimed the loans were past the statute of limitations and therefore not enforceable. However, the loans were drafted in 2012 after Adam filed for bankruptcy of his two companies in 2010. The drafts did not reflect the loans were for the companies. There was no provision included in the loans for a statute of limitations when they were verbal or later. If there had been or if one existed by law, it would have been applied from 2012 forward. The Parol evidence rule would have precluded one for *fraud*, *mistake*, or *invalidating cause*. Furthermore, Adam unconditionally promised to repay the loans if Lauara agreed to put them in his bankruptcy, and as a stipulation, Adam promised to pay them with no conditions, no restrictions. This is an exception under the parol evidence rule. The testimony of Lauara confirms that it was never intended that there be a statute of limitations just as there was no statute of limitations on Max's Rule 60(d) motion for relief.

39.     First, Adam acknowledges the loans to him were $650,000 and claims he told Lauara he was putting their loans on his bankruptcy. However, Lauara testifies that Adam asked her if it was alright that the couple claimed they had loaned Adam the money for his bankruptcies, and as a condition, Adam unconditionally guaranteed he would repay her and

Lauara concurred.

40.     Secondly, it is impossible to have agreed to lend Adam the money for his bankruptcy in 2010 from loans beginning in 2004. (see Adam's Affidavit pg. 1. No. 2) and not drafted until 2012, and without Max knowing about the bankruptcies. Adam, Lauara, and Mr. Meador are lying to cover their theft from Max, Adam for stating this in an affidavit, and Lauara and Mr. Meador for providing it in their Motion. A review of Adam's affidavit confirms it was drafted by Mr. Meador's firm. Mr. Meador, Lauara, and Adam are fabricating evidence to cover up previous fabricated evidence. This is a violation of Rules 11 and 60  to cover up previous violations of Rules 11 and 60.

41.     Thirdly, Max reported to the Sevier County Sheriff's Office and Sgt. Crane that Lauara had been repaid the loans. Sgt. Crane's report confirms that Lauara told him that she had been repaid but that Max knew and was part of it. *See* Max's "BRIEF" Exhibit AA, Appendix Volume XIX 5516. In Adam's affidavit, he claims the loans were never repaid, and that they were now beyond the statute of limitations even though Lauara testified that Adam promised unconditionally that he would repay the loans if she allowed him to put them in his bankruptcies. Neither Adam nor Lauara intended to honor the loans and repay Max. Adam, Lauara, and Mr. Meador are still responsible for repaying Max. Mr. Meador insists that Adam is judgment proof with numerous judgments against him. Knowing Adam was judgment-proof makes Mr. Meador and his firm liable.

42.     Though the loans had been repaid to Lauara in or before 2015, in 2017 Adam claimed he had the money to repay Max the loans but that his business partners came first. See Exhibit RRR. Exhibit BBB's Exhibit 14 and No. 49 below which confirm that Adam was laundering money from his business's bankruptcies. Defendant Mr. Meador was provided this

information. This tape was also provided during the discovery of the divorce. On December 2, 2017, a few weeks after Lauara left Max Lauara and Adam were still telling Max the loans had never been repaid. Lauara et al never confirmed that the loans had ever been put in Adam's bankruptcies until Lauara's deposition with her attorney, Mr. Meador, in March 2019. Up until that point, Max still believed the loans were outstanding and sued Adam to collect them, Case No. 3:18-cv-00588-LRH-CLB. Max prevailed and was awarded a default judgment. Lauara, Mr. Meador, Adam, and Ryan allowed Max to sue knowing the loans had been repaid.

43.     The parole evidence rule prohibits Lauara, Mr. Meador, and Adam from claiming there was a statute of limitations.

**PAROL EVIDENCE RULE**

The Nevada Supreme Court in *Crow-Spieker 23 v. Robinson* 629 P.2d 1198 (1981) stated,

> The existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol." *Alexander v. Simmons*, 90 Nev. 23, 24, 518 P.2d 160, 161 (1974).

> Supreme Court of Ohio. *GALMISH, Appellant, et al., v. CICCHINI*, Appellee, et al. No. 99-1337. Decided: September 20, 2000, "The parol evidence rule states that "**absent fraud, mistake or other invalidating cause**, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements."    11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4.

> *Novell v. The Canopy Group* :: 2004 :: Utah Court of Appeals,

> "The parol evidence rule "**operates in the absence of fraud to exclude** [prior and] contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an integrated contract." Union Bank v. Swenson, 707 P.2d 663, 665 (Utah 1985) (emphasis omitted). "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." Eie v. St. Benedict's Hosp., 638 P.2d 1190, 1194 (Utah 1981) (quotations and citation omitted)."

There was "fraud" and other "invalidating causes" in this case, by Lauara, Mr. Meador, and Adam. The verbal contracts are the only contracts that can be considered. The ones at the beginning of the loans and the promises Adam made Lauara in 2010 when she allowed him to put them on his bankruptcy. The parol evidence rule makes the contracts even stronger.

44.     Additionally, in his Affidavit, Adam acknowledged that Max obtained a default judgment against him in Nevada. The default judgment was in the U.S. District Court of Nevada. Adam failed to respond to Max's Complaint. Adam alone was listed in the Nevada complaint. Max originally listed Lauara in his North Carolina Complaint as well but dropped her prior to her answering. Considering that Lauara, insisted the notes be awarded to Max and then threatened to come after Max for half of the funds awarded to Max by the court, confirms the validity of the loans, and that no statute of limitations applied. Lauara cannot tell Sgt. Crane the loans were repaid and then two years later furnish a pleading claiming they were not. This violates Rules 11 and 60. Max sued in good faith, believing that the loans had not been repaid.

45.     Mr. Meador's Motion on pg. 2:3-6 claims that Adam listed his debt to Max in his Affidavit provided as Exhibit 1. *See* Max's Exhibit BBB, Exhibit 5. In Adam's Affidavit, included as Exhibit 1. to Mr. Meador's Motion, Adam states on pg. 4:26-5:2 that he has been transparent in his promissory notes and has shown Max's lawsuit in his latest bankruptcy and that he furnished it in Exhibit A of his Affidavit. There was no Exhibit A attached to his Affidavit or in Mr. Meador's Motion. Adam's transparency is clouded by never involving Max in placing Max's loans into bankruptcies. There is a single page preceding Adam's Affidavit that lists Max's lawsuit in North Carolina, but not as Exhibit A. Adam did not list his mother, Lauara, who would have been the first person he would have listed. This points to the fact Lauara had been repaid the notes. *See* Max's "BRIEF" Exhibit AA filed with the Court, No. 45 which refers

to Adam's bankruptcy citing Max's Exhibit at Appendix Volume XIX 6216-6223 and provided here for the Court's convenience as Exhibit BBB's Exhibit 7. A review of those documents in Max's "BRIEF",  and considering Adam's purported Affidavit, Exhibit A, Adam's present bankruptcy did not list either Lauara, Ryan, or Max. Additionally, Adam declined to list Max's judgment against him in the U.S. District Court of Nevada, or the North Carolina Court in this recent bankruptcy. *See* Exhibit 7. Though Adam listed the other debtors shown on the first page of his Affidavit, Adam did not list Raymond Max Snyder v. Adam Lisk... in either of Max's Complaints against him. *See* Exhibit 7. Mr. Meador's Motion and Adam's Affidavit were fabricated to hide the notes having been repaid to Lauara and violate Rules 11 and 60. Mr. Meador was furnished with this information. Max has provided Adam's complete bankruptcy following bates number 6223. You'll note that Max, Ryan, and Lauara are not included. Adam falsified his declaration and Mr. Meador and Lauara knew it and fraudulently entered it in the court record in violation of Rule 11.

46.     Lauara, Adam, Ryan, Mr. Meador, and Woodburn & Wedge allowed Max to sue Adam in Nevada and North Carolina knowing the loans to Adam had been repaid to Lauara. They induced Max, who did not know the loans had been repaid, into filing frivolous lawsuits. Lauara, Mr. Meador, his firm, Ryan, and Adam were responsible for the frivolous suits. Frivolous lawsuits are seriously punished. There are monetary penalties and other charges that might be levied including fines, criminal charges, and charges for contempt of court. If a lawyer is caught up in a frivolous lawsuit, they could face a suspension of their state bar license, citations, or fees. Mr. Meador was involved. His license should be suspended and he and his firm should be ordered to pay all Max's attorney fees and damages pursuant to Rule 11 and in accordance with Nevada statute, NRS 42.005. As a result of Mr. Meador's and Lauara's pre-

Trial Statement the divorce court found, *"The Court specifically finds that most of Mr. Snyder's legal entanglements constitute a waste to community property especially in the North Carolina…what he was trying to do or tried to do was sue Mrs. Snyder with some of her own money."* *See* trial transcripts day V XIX 6389-6390, pgs. 8:23-9:4. This came from Exhibit A, Lauara's pre-Trial Statement, at 20:21-21:4.

47.     On pg. 4 of his affidavit, Adam confirms that his bankruptcies in 2010 were for two businesses. Those Businesses were Old Mill Forestry and Carol Lynn Properties. Carol Lynn Properties listed Lauara as a creditor for $210,000. *See* Exhibit BBB's Exhibit 3 pg. 2. which confirmed that the company had assets of $3,000,961.00 and debts of just $1,431,291.19, *See* pg. 3. After deducting its debt, the company was worth over $1,550.000 when Adam placed it into bankruptcy.

48..     The second business was Old Mill Forestry. Old Mill Forestry had assets of $8,130,080.00 and debts of $2,357,621.34. *See* Exhibit BBB's Exhibit 4, pg. 2. The Company was worth $5,872,550 after accounting for its debt. Lauara was listed as a creditor for $440,000. *See* pg. 3. Adam filed bankruptcy on the companies though they had assets that exceed debt by $7,422,550.  $650,000 of the debt was attributed to loans from Max and Lauara which was not a business debt but an asset of Max and Lauara. This constitutes fraud. It's impossible to say just how much Adam was hiding in the bankruptcy. With assets listed as debt, it far exceeded the $7,422,550 he and his attorney listed.

49.     Exhibit BBB's Exhibit 4 beginning on pg. 4 are the documents from the two bankruptcies sent to the Nevada Supreme Court following Max's Appeal. They are bates numbered in the bottom right corner beginning with 6312, Max's Rule 60(b)(3) Motion to the divorce court dated December 23, 2020. This is just one notice Mr. Meador was given

PLEADING TITLE - 36

confirming that Lauara had been repaid the loans she allowed Adam to place in his bankruptcies. Max's pleading referencing the couple's loans runs from 6325-6331.

50.     Page Nos. 6435- 6461 are for the Carol Lynn Property LLC bankruptcy. Page 6449 confirms that Adam is owed $110,000 and that Advanced Clearing and Grinding is owed $95,000. Advanced Clearing and Grinding is owned by Lauara's oldest son, Ryan, who lives at the address shown in the bankruptcy court's filings. Ryan received the bankruptcy notices from the court as did Lauara. Neither Ryan nor Advanced Clearing is shown in Adam's most recent bankruptcy. Page 645 shows Lauara as a creditor for $210,000. Lauara is not shown as a creditor in Adam's latest bankruptcy. See BBB's Exhibit 7 previously furnished to Mr. Meador. Adam's complete bankruptcy filing follows No. 6223 in Exhibit 7. Pages 6453-6486 are the consummation report confirmed and signed by Adam confirming that the creditors had been repaid. The court then dismissed the Carol Lynn Properties bankruptcy. Ryan, Adam, and Lauara had been repaid. Mr. Meador, Lauara, Adam, and Ryan knew this.

51.     Pages 6486- 6501 is the Old Mill Forestry bankruptcy. Page 6498 confirms that Advanced Clearing and Grinding, owned by Ryan was owed $120,000. Page 6499 confirms that Lauara was a creditor for $440,000. Pages 6502-6514 are Adam's declaration concerning the repayment to debtors. Pages 6527- 6561 are the Certificate of Dissolution and declaration pages 6528-6533 confirming the creditors had been repaid. Pages 6544-6560 are the Order Confirming Adam's Plan. Adam confirms that he, Lauara, and Ryan were repaid.

52.     Lauara and Ryan were kept up to speed with the status of Adam's bankruptcies by the bankruptcy court and the hearing that was scheduled with creditors to confirm they had been repaid. *See* Exhibit BBB's Exhibit 13. All notices from the bankruptcy court went to Lauara, Adam, and Ryan, Max was never involved and knew nothing about the bankruptcies, or the

PLEADING TITLE - 37

hearing for creditors to confirm their repayment.

53.     At the same time in June 2015, Adam sent Max and Lauara an email. The email confirmed Adam was funneling funds from Old Mill Forestry through his bank in North Carolina. *See* Exhibit BBB's Exhibit 14. At the time this meant nothing to Max. If Max had been involved as he should have been, Max would have known Adam was laundering money from his bankruptcies and would have been at the bankruptcy hearing to claim his and Lauara's loans and expose Adam's money laundering.. Lauara had been repaid by then and knew that her son was funneling funds in excess of $7,422,550 out of the companies to conceal it from people like Max. Adam did not claim Max and Lauara's loans as his funds in the bankruptcies as he claims. He listed Lauara as a creditor. This is simple theft by Adam, Ryan, Lauara, Mr. Meador, and his firm. Old Mill Forestry and Carol Lynn Properties were a corrupt organization as defined by the RICO Act for Adam, Ryan, and Lauara to hide funds and then launder them following an unlawful bankruptcy.

54.     In his "BRIEF," Exhibit AA, Max confirmed with exhibits in Appendix Volume XIX 9(a), 6496-6508, and V XIX 6202 that Lauara had been secretly repaid the loans and that Adam and Adam's attorney had confirmed that with their signatures on 11/4/2015, 11/5/2015 and 11/17/2015, confirming that the October 27, 2011, Plan of Reorganization, approved by the Bankruptcy Court, had been completed and that all creditors, including Lauara, had been repaid. *See* Exhibit BBB's Exhibit 9, V XIX 6202, furnished for the Court's convenience. The remaining documents confirming this more completely and that all creditors had been repaid can be located in Appendix Volume  XIX 9a, 6496-6508.

55.     Exhibit BBB's Exhibit 14, demonstrates RICO violations, Adam laundering money from the bankruptcy and further confirms Lauara was repaid the loans. The remaining

PLEADING TITLE - 38

documents showing when Lauara was repaid can be located and viewed in Max's "BRIEF".

56.     Lauara, Mr. Meador, and Adam would have us believe that Lauara had never been repaid despite; 1) the companies had more than $7,422,550 in assets above debt as confirmed by Adam and his attorneys signatures; 2) that with Adam and his attorney's signatures on the bankruptcies confirmed the creditors had all been paid; 3) with Lauara being involved by the bankruptcy court and promised that she would be repaid; 4) that Lauara, chose not to attend the bankruptcy hearing or involve Max; and 5) neither Lauara nor Max is listed in Adam's latest bankruptcy, had never been repaid. Mr. Meador's, Lauara's, and Adam's latest claim that Lauara was never repaid the loans intentionally violates Rule 11 to cover up previous Rule 11 violations. Lauara, Adam, and Mr. Meador take everyone for fools.

57.     Following retaining Mr. Meador to represent her in the divorce, and a few months before leaving Max, Lauara insisted on taking a "voluntary" polygraph test to confirm to Max that everything was fine with the loans to Adam. See Exhibit FFF. The last page of the report, Examiners Professional Opinion, confirms that Lauara was not truthful about the loans to her son. Not only is Lauara the star witness in the loans to Adam. She is AmFam's, and Mr. Harman's star witness, and Sevier County's star witness that Max stole an "operable vehicle". Lauara's litany of lies and fraudulent acts are beginning to unravel

58.     Lauara had been repaid the loans on or before 2015. Lauara had been kept up to speed on Adam's bankruptcy progress by the bankruptcy courts. See Exhibit BBB's Exhibit 13, Notices from the Bankruptcy court informing Lauara of the November 24, 2015 hearing scheduled to hear Adam and his attorney's Reorganization Plan confirming all the creditors had been repaid. Max had never been included. Because she had been repaid Lauara chose not to attend the court hearing, and Lauara, Ryan, and Adam in their cover-up chose to not inform Max.

59.     On May 14, 2023, to prevent Max from further exposing his Rule 11 violations, Mr. Meador filed a Motion to place Max on a vexatious litigant list with the Nevada divorce court. See Exhibit TTT pgs. 1-12.

60.     On June 5, 2023, Max filed a Rule 11 Motion for Sanctions against Mr. Meador under NRCP Rule 11(c)(1)(A) and 11(c)(2) requesting Mr. Meador remove his Rule 11 violations from court documents that Max had confirmed in his Hearing Brief for the October 11, 2023 Hearing… Max's Exhibit AA and his Rule 11 violations in his Motion to place Max on a vexatious litigant list. See Exhibit TTT pages 12-20. Mr. Meador declined to acknowledge or remove his Rule 11 violations from the record in the divorce trial.

61.     On June 24, 2023, Max filed a second Rule 11(c)(1)(A) and 1(c)(2) requesting "Mr. Meador address each of Max's allegations of fabrications of evidence, false documents that Max confirmed in his Brief for October 11, 2023 Hearing and Supporting Argument for Rule 60(b)(1) through 60(b)(2)…, [and] acknowledge they are false and remove them from the record." See Exhibit TTT pages 21-28. Mr. Meador refused and instead sent Max a threatening letter on July 7, 2023, demanding Max withdraw the motion. See Exhibit TTT page 29.

Mr. Meador was provided 21 days to withdraw his Rule 11 violations. NRCP Rule 11 states, "11(c)(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation… Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Mr. Meador is a senior partner in his firm. His firm is responsible for Max's damages and should be sanctioned accordingly.

PLEADING TITLE - 40

62.     Max's allegations of Mr. Meador's violations of Rule 11 in his <u>Brief for October 11, 2023, Hearing and Supporting Argument</u>…, Max's Exhibit AA provided herewith, are overwhelming in confirming Rule 11 violations by Mr. Meador and confirm the outcome of the divorce trial was predetermined. The Divorce Decree must be dismissed.

63.     The Fourteenth Amendment states,

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

> *U.S. v. Throckmorton,* 98 US 61 WHEREAS, officials and even judges have no immunity See, *Owen vs. City of Independence*, 100 S Ct. 1398; Maine vs. Thiboutot, 100 S. Ct. 2502; and *Hafer vs. Melo*, 502 U.S. 21; officials and judges are deemed to know the law and sworn to uphold the law; officials and judges cannot claim to act in good faith in willful deprivation of law, they certainly cannot plead ignorance of the law, even the Citizen cannot plead ignorance of the law, the courts have ruled there is no such thing as ignorance of the law *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958). "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.

The law in this case is and was at the time clearly established. It was not established after the violations by the Sevier County Defendants, the Sevier County Attorney, Casey Jewkes, Detective Deaton,  and Judge Goble. Mr. Meador and Lauara are included in the violation of Max's due process. Not one of the defendants claims ignorance of the law or incompetence. They do not qualify for qualified immunity under either the incompetence or ignorance prong.

> Courts must heed "the Supreme Court's warning in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978)), against the temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.' " *Bruno's Restaurant*, 13 F.3d at 290 (quoting *Christiansburg*, 434 U.S. at 421-22); see also *Forsberg v. Pacific*

*Northwest Bell Tel. Co*., 840 F.2d 1409, 1422 (9th Cir. 1988).

Given Detective Deaton and Judge Goble's actions, this Court is not precluded from ruling against them by the *Younger* or *Rooker-Feldman* doctrine.

**VII.    Fabricating Evidence and Rule 11 Violations by Defendants Lauara Ann Snyder and Attorney Shawn B. Meador Confirmed in Plaintiff's Exhibit AA, Hearing Brief For The October 11, 2023, Hearing, And Supporting  Argument For Rule 60(B)(1) Through 60(B)(6), Rule 60(D)(3), NRS199.210, NSCR 2.11, And The Due Process Clause Of The 14th Amendment…, For Vacating The Divorce Decree,**

64.    Max realleges and incorporates by this reference all allegations set forth in paragraphs 1. through 59. as though fully set forth herein.

65.    In Max's Exhibit AA, Max's Hearing Brief For The October 11, 2023 Hearing, And Supporting  Argument For Rule 60(B)(1) Through  60(B)(6), Rule 60(D)(3), NRS199.210, NSCR 2.11, And The Due Process Clause Of The 14th Amendment…, For Vacating The Divorce Decree (Max's BRIEF), provided herewith Exhibit AA, Max confirmed in Nos. 191-194, that Lauara and Mr. Meador fabricated evidence, and included the fabrications in Lauara's pre-Trial Statement with false statements and unfounded disparaging allegations against Max. Lauara's Trial Statement was used to draft the Divorce Decree. Max discovered this in late 2021.

66.    No. 194, A through SS of Max's BRIEF confirms that Lauara's and Mr. Meador's pre-Trial Statements made unsubstantiated derogatory statements about Max, had numerous false statements and cited documents not allowed at trial. Each section, A through SS confirms where a false statement in the Trial Statement is transferred to and cited in the Divorce Decree, Exhibit B.

67.    In Nos. 195-232 of Max's BRIEF, confirms that Mr. Meador drafted Orders with knowingly false inclusions which were signed by the judge in violation of Rule 11.

68.    In Nos. 233-252, of Max's BRIEF, confirms that Lauara and Mr. Meador

knowingly used the false police reports of Sgt Crane of the Sevier County Sheriff's Office to gain an advantage and have Lauara awarded her attorney fees. This violated Rule 11 and several other statutes Max cited. In Nos. 233-252 it is also confirm that the Sevier County Sheriff's Office covered up Max's alleged poisoning by Lauara and that Mr. Meador divulged the product Lauara had used. No. 245 references Max's Exhibit confirming the chemical that poisoned Max. Max had no idea where it came from. No. 247 of Max's BRIEF confirms that at Max's deposition on March 27, 2019, Mr. Meador stated the product Max had ingested that contained the chemical that poisoned him. At the time Max had no idea. Mr. Meador and Lauara intentionally violated Nevada statutes NRS 195.020 and NRS 195.030 to prevent discovery of Sgt. Cranes cover-up cover of Max's poisonings attempted murder.

69.     In Nos. 61-85, of Max's BRIEF, confirm that Lauara and Mr. Meador fabricated false cash loans they claimed Lauara made herself to obligate Max for hundreds of thousands of dollars in repayment. This included Lauara claiming she had to amend the couple's tax returns to show the loans she had never reported to the IRS. The Court ordered she and Max to cooperate in amending the couple's tax returns. Mr. Meador and Lauara declined to allow Max to participate.

70.     Nos. 74-85 of Max's BRIEF confirm Lauara amended returns for different years than those ordered by the court. Lauara refused to allow Max to participate in the amendment of the taxes and all the funds Lauara sent to the IRS were returned. However, Lauara has continued claiming in court documents that she had paid the taxes and that Max owes her half.

71.     Nos. 106-108 of Max's BRIEF confirm Lauara and Mr. Meador falsely claimed that Lauara and Max had made $260,000 in improvements to Max's home. The divorce court awarded Lauara half, $130,000. Nos. 194 H and 194 AA confirm these fabrications came from

the pre-Trial Statement drafted by Mr. Meador. Lauara and Mr. Meador violated Rule 11 and several other Nevada statutes Max cited in his BRIEF.

72.     Nos. 22-37 of Max's BRIEF confirm that Lauara falsely testified at trial that Max's disability was workers' compensation from Max being injured on the job during the marriage and off work. Lauara did this to be awarded half and she was awarded half of Max's disability. Following trial, Max confirmed that the disability was not workers' compensation, that he was not off work, and that besides the large portion improperly awarded to Lauara as a result of her perjury, Max had deposited $307,800 of his separate disability award into the joint account. Max confirmed in No. 194 BB that Lauara's false statement originated in Lauara's pre-Trial Statement and was transferred to the Divorce Decree. No. 33 of Max's BRIEF confirms that Max deposited an additional $203,373 in separate funds from a premarital pension into the joint account. Max is entitled to recoup half the disability payments and half the premarital pension benefits deposited into the joint account.

73.     Nos. 13-19 of Max's BRIEF confirm that Lauara falsely testified Max had paid his attorney Justin Heideman $150,000 from community property. The funds were not community property and Lauara was awarded over half from Max's personal account. Mr. Heideman was disqualified by the judge from representing Max for a purported conflict of interest. Nos. 194 FF and 194 GG confirm this false allegation originated in Lauara's pre-Trial Statement and was transferred to the Divorce Decree. In No. 113, of Max's BRIEF, Max confirms that Mr. Meador acknowledged Max only paid Heideman $7,000.00 and that was to petition the court for permission to represent Max. This is a Rule 11 violation by Mr. Meador. No. 194 Y confirms Mr. Meador insisted Max pay Lauara $109.063 from Max's personal account with a balance of $218,127. In No. 194 QQ it is confirmed that Max is ordered to pay

Lauara $75,000 from the same personal account. Max was ordered to pay Lauara $184,063, or 85% based upon false fabrications from his separate account. Max confirmed that the account was his separate account only by providing deposit statements. Max provided deposit statements. See Nos. 32-35.

74.     No. 10 of Max's BRIEF confirms that Mr. Meador drafted a Temporary Mutual Property and Financial Restraining Order and entered it with the district court. The order prohibited either party from accessing their IRAs. With Mr. Meador's knowledge, Lauara paid his and the other Woodburn & Wedge attorney fees from her community property IRAs prohibited by the FRO drafted by Mr. Meador. Nos. 18-20 of Max's BRIEF  confirm Lauara testified she paid Mr. Meador from her IRAs. Lauara had a minimum of $312,147 in her IRAs at the beginning of the divorce. No. 117 of Max's BRIEF confirms the district court allowed Lauara's payments to Mr. Meador from her community property IRAs. The court then improperly order that what was left of Lauara's IRA be combined with Max's and split which allowed Lauara to retain 100% of her much larger IRA and receive a large portion of Max's.

75.     Nos. 51-60 of Max's BRIEF confirm that Mr. Meador's pleadings falsely claimed Max's pleadings violated the local rules. This resulted in the divorce court disallowing all of Max's post-trial pleadings and sanctioning Max by quitclaiming jointly owned property to Lauara. This violated Rule 11 and several Nevada statutes cited by Max.

76.     Nos. 111-116* of Max's BRIEF confirm that the trial judge, Robert E. Estes, should have recused himself as provided by NV.Sup.Ct.R 2.11, 28 U.S.C 455, NRS 1.230(1) and *Tarsey v. Dunes Hotel* 343 P.2d 910 (1959), and the Nevada Code of Judicial Conduct. Nos. 115-116 of Max's BRIEF confirm that the judge declined to consider the trial exhibits and argument at trial or allow Max's expert witness to testify in violation of Nevada law and instead

drafted the Divorce Decree from Lauara's false pre-Trial Statement. Nos. 182-196 of Max's BRIEF also confirm the judge should have recused himself.

77.     Nos. 118-121 of Max's BRIEF confirm that Lauara was awarded $425,000 in attorney fees though she claimed $326,872 and that these fees included Lauara's attorney fees against Max's son. Max was ordered to pay Lauara $50,000 within a few weeks of trial, then $2,000 per month for 150 months for her attorney fees. This violated Rule 11. No. 138 of Max's BRIEF confirms that on March 27, 2021, Mr. Meador drafted an Order signed by the court that increased the $2,000 to $4,000 per month, doubling the award against Max. This violated Rules 11, 60, and the Nevada statutes Max cited.

78.     Nos. 122-133 of Max's BRIEF confirm that Max was unlawfully kept from attending an Order to Show Cause hearing on November 10, 2020, thus violating his civil rights. At the hearing, Mr. Meador handed the judge a preprepared order violating Rule 11 and awarding Lauara additional sums from Max. Nos. 134-140 of Max's BRIEF confirm that though Max was allowed to attend the March 31, 2021 Order to Show Cause hearing. he was not allowed to present an argument, was sanctioned and Lauara's award against him was significantly increased in violation of Rule 11 and other Nevada statutes. Both hearings were held during Max's appeal of the divorce and without the district court having jurisdiction.

79.     No. 137 of Max's BRIEF confirms that Mr. Meador drafted the Order following the March 31 hearing and it was signed by Judge Estes. Nos. 140-144 of Max's Brief confirm Mr. Meador sent pleadings directly to the judge bypassing the court; confirmed the vandalized motorhome was overvalued by Lauara to allow Lauara a larger award, and the judge refused to allow Max to argue about the motorhome and refused or review Max's hearing brief on the issue.

80.     Mr. Meador drafted and forged all the Nevada orders in violation of NRS 205.463

and NRS 207.360. Judge Estes then signed the pleadings in violation of Rule 11.

81.     Max filed a Complaint against Judge Estes in the U.S. District Court in Nevada, Case No. 2:23-cv-000048-ART-CSD. Max claimed a violation of Rule 11 and Nevada Supreme Court Rule 2.11 against the judge. Judge Estes did not deny the allegations and simply pleaded qualified immunity and unlawfully declined to recuse himself.

82.     Judge Estes' has refuseed to recuse himself in violation of Nevada Supreme Court Rule 2.11. The U.S. Supreme Court overruled the Nevada Supreme Court in *Rippo v. Baker* confirming that the trial judge should have never been allowed to continue stating, "We vacate the Nevada Supreme Court's judgment because it applied the wrong legal standard. Under our precedents, the Due Process clause may sometimes demand recusal even when a judge " 'ha[s] no actual bias.' '… *See* No 288, Max's Brief, page 59:8-60:9. Max's Brief confirms Judge Estes had biases and should have recused himself or been removed.  Judge Estes' has refused to recuse himself and thus no longer has jurisdiction.

> "If a judge does not fully comply with the constitution, then his orders are void *In re Sawyer*, 124 U.S. 200 (1888). He/she is without jurisdiction..." "Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *S v. Will*, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821)."

The divorce decree must be dismissed.

83.     Following Max exposing the fraud Mr. Meador's, Lauara's, and Adam's pleading claiming the couple's loans to Lauara's son had not been repaid Lauara to be a lie in violation of Rule 11, Mr. Meador filed a Motion to place Max on a vexatious litigant list with the Nevada divorce court, See Exhibit TTT pgs. 1-12. Mr. Meador retaliated by having Judge Estes file an order titled Order Holding in Abeyance All Motions Filed Post-November 28, 2022, and

PLEADING TITLE - 47

Staying… to prohibit Max from using his BRIEF filed with the court on May 30, 2023, to argue his appeal on remand from the Nevada Court of Appeals. See Exhibit TTT(1). This is from a judge in violation of Nevada Supreme Court Rule 2.11, a judge who no longer has jurisdiction in the case. This violates Max's due process under the 14th Amendment. The Divorce Decree must be dismissed. Prior to Judge Estes' Order Holding in Abeyance All Motions Filed Post-November 28, 2022, and Staying… Max confirmed in his Motion for Summary Judgment to the U.S. District Court of Nevada that Judge Estes Violated Rule 2.11 and had no jurisdiction to proceed. See Exhibit WWW. Max's Notice to the district court that Judge Estes lacked jurisdiction in the case. Judge Estes proceeded knowing he should have recused himself and that he lacked jurisdiction. All Judge Estes' pleadings and Orders must be dismissed.

84.    Max had produced a police report from the Henderson Police Department that confirmed the motorhome had not been broken into and that Lauara had returned to the vehicle several times and had removed items. Max provided AmFam with documentation confirming that it was Lauara who had burglarized and severely vandalized the RV. AmFam acknowledged but declined to pursue stating they were going to honor Max's claim anyway.

85.    Nos 195-213 of Max's BRIEF and the exhibits referenced confirm Mr. Meador 1) fabricated evidence and made false statements about Max's transfer of water rights; 2) falsely claimed that Max offered no legal authority to allow a lower bond when Max had provided sufficient documentation; 3) Stated Max did not deny these facts when Max vehemently did; 4) stated Max admitted not cooperating with the QDRO… and that Mr. Meador had an affidavit he could supply the court proving all this. Mr. Meador declined to provide an affidavit. Max had provided a QDRO within weeks of the trial. Yet, Mr. Meador insisted that Max be arrested for Mr. Meador's false allegations then drafted the Order including all this false information and

PLEADING TITLE - 48

ordered Max to be arrested  if he did not comply forged order.

86.     The Divorce Decree ordered one of the Nevada businesses was community property and was to be closed and the assets sold and split between Max and Lauara. Instead, Lauara obtained a new business license under a different name; retained the company assets and clients; transferred them to the new company: closed the original company; and continued in business without compensating Max. See No. 141 of Max's BRIEF.

87.     Nos 167-168 of Max's BRIEF confirm the court improperly awarded the rest of the Nevada Business to Lauara. Judge Estes dismissed Max's CPA expert witness and disallowed the couple's tax returns that proved the shared ownership of the Nevada businesses.

88.     No. 259 of Max's BRIEF confirms the divorce court found, "*The Court specifically finds that most of Mr. Snyder's legal entanglements constitute a waste to community property especially in the North Carolina…what he was trying to do or tried to do was sue Mrs. Snyder with some of her own money." See* trial transcripts day V XIX 6389-6390, pgs. 8:23-9:4. This came from Exhibit A, Lauara's pre-Trial Statement, at 20:21-21:4.

89.     The firm of Woodburn & Wedge had a trial judge in their pocket who followed their game plan, believed whatever they said, and signed whatever they put in front of him. The judge was implicated in Mr. Meador's, his fellow attorneys', and Woodburn and Wedge's RICO violations.

90.     No. 194 OO confirmed the couple lent Wendover Ambulance money and the Nevada Court of Appeals confirmed that the loans needed to be repaid.

These are but a portion of the violations Max cites in his BRIEF.

## IX.    ARGUMENT

91.      Unbeknownst to Max until the divorce discovery, Lauara had begun stealing

PLEADING TITLE - 49

from Max within five months of their marriage when she forged his name on a quick claim deed. Seventeen years later, she and her accomplices, the defendants in this pleading, planned to steal everything from Max. They have been successful to date. They along with the trial judge, violated the RICO Act. These individuals should be referred to competent law enforcement for an investigation into their actions including Max's poisoning and the coverup by Lauara's attorneys, the Sevier County Sheriff's Office, and the Sixth District Court.

92.     Lauara her attorneys and the other defendants assisted in violating Max's constitutional rights guaranteed by the 5th and 14th Amendments.   The Sevier County Attorney, Detective Deaton, and Judge Alex Goble assisted in allowing Lauara, Mr. Meador, Ryan Lisk, and Adam Lisk to steal from Max and cover up his poisonings.

93.     Lauara and her attorneys insisted the loans to Lauara's son, which were secretly paid to Lauara, be awarded to Max as his separate property. These individuals must be ordered to pay Max the sum of what the loans to Lauara's son, Adam, are worth going forward to the time the loans are paid in full to Max.

94.     Judge Estes violated Rule 11 signing Orders he knew were wrong. He refused to recuse himself from the divorce in violation of Nevada Supreme Court Rule 2.11. As a result, the Judge lost jurisdiction. All his Orders and the divorce decree must be stricken,

95.     All liens placed on Max's private property for the falsely based orders and sanctions must be removed.

96.     Lauara be ordered to furnish Max with all the 2001 – 2008 financial records which have been formally and legally requested multiple times throughout the divorce

97.     The Nevada businesses, the loans to Wendover Ambulance, and all the Nevada properties were community property and must be split in Max's favor.

PLEADING TITLE - 50

98.     Lauara, and her attorneys, must be ordered to restore Max to his financial condition prior to Max filing his complaint for divorce, setting the values of Max's separate properties at those shown in Lauara's 2020 financial statement and ordering these individuals to purchase those assets from Max and to compensate Max at the rate provided by NRS 42.005.

99.     Max has shown that a total of $307,800.29 of his separate disability checks went into the joint account. Max is entitled to be reimbursed by Lauara for half of that amount. Max has shown that $203,373.00 from his Intermountain Ironworkers Pension went into the joint account. Max is entitled to be reimbursed by Lauara for half that amount.

100.    Lauara is required to reimburse Max for half of her paychecks not deposited into the joint account following hiring her lawyers and to reimburse Max for half the funds she funneled from the joint account to the Nevada companies during the entire marriage.

101.    Lauara is required to reimburse Max for half the funds she funneled from the joint account to the Nevada companies and her IRAs during the entire marriage.

102.    Lauara is required to reimburse Max for half the funds she funneled from the joint account to the Nevada companies and her IRAs during the entire marriage.

103.    Lauara and her attorneys are responsible for all of Max's attorney fees.

104.    Lauara and her attorneys should be referred to competent law enforcement for an investigation into their actions.

## X.   Damages

| | | |
|---|---|---|
| 1. | Motorhome | $97,500  + out of pocket expenses. |
| | Plus half the personal property | |
| | removed by Lauara | $30,000 plus or minus |

| | | | |
|---|---|---|---|
| 2. | | Repairs to the motorhome | $80,000-100,000 estimate |
| 3. | | F550 pickup | $30,000 + whatever it costs to upgrade. |
| 4. | | Max's Utah home | $1,200,000, Defendants order to purchase |
| 5. | | 50% of the value of PSC | $500,000 |
| 6. | | 50% of Wendover Ambulance | $2,000,000 |
| 7. | | Loans to Adam Lisk | $2,055,405.32 + continuing interest @ 10% |
| 8. | | Max's disability Pension. | $10,000 + the continuing payments |
| 9. | | Lauara's legal fees. | $500,000 + any additional fee incurred. |
| 10. | | Max's disability account. | $352,856 + interest. |
| 11. | | Max's NV judgments | |
| | a. | judgments. | $715,487.85 |
| 12. | | Water shares to Lauara | $42,000 + |
| 13. | | Taxes on Max's IRA withdrawal | $60,000 + |
| 14. | | Loans to Mt. West to buy WAS | $315,517+ interest |
| 15. | | 50% of the NV community prop. | $1,000,000. |
| 16. | | Quitclaimed NV Prop.to Lauara | $62,500.00 + interest. Florence Street |
| 17. | | 50% of the value of the NV home | $80,000+ interest |
| 18, | | Payments from Max's pension | $10,000+ plus interest |
| 19. | | Max's attorney fees Nevada: | |
| | a. | Wasilewski | $59,850 |
| | | Sanction | $8,531 |
| | | NC depositions | $10,141 |
| | b. | Amens | $79,571.24 |
| | | owed | $27,500 |
| | c. | Bushur | $41,500.00 |
| | d. | Heideman | $150,000 |
| | e. | Mendez | $350.00 |
| | f. | Anderson Fam. Law | $300.00 |
| | g. | Mustoe Law | $295.00 |
| | h. | Mike Kolsch | $125.00 |
| | i. | Jonathan King, Reno | $150.00 |
| | j. | Misc. expenses  NC | $5,000.00 |
| | k. | Jared Peterson | $? |
| | l. | Jeff Dickerson | $50.00 |
| 20. | | Max's attorneys North Carolina | |
| | a. | Cooper | $28,770.15 |
| | | owed | $37,274.56 |
| | | sanctioned | $14,845.00 |
| | b. | Alex Heroy | $50,000 |
| | | NC Judgment | $85,000.00 |
| | c. | Arbitration | $600.00 |
| | d. | Howell attorney fees | $7,742.50 |
| | e. | Blue Bee bankruptcy | $9,302.00 |
| | f. | 1st trip to NC Hearing | $6,000.00 |
| 21. | | Max's 31 shares of water | $186,000+ interest |
| 22. | | Sold personal property for legal fees | $10,000+ interest |

PLEADING TITLE - 52

| 23. | Lauara removed from Businesses Oct/Nov 2017 | $913,956 + interest |
| 24. | False home improvements to Max's house | $260,000 |
| 25. | 50% of Lauara's IRAs disbursements | $165,000  ( half of $309,000 - $76,000) |
| 27. | Lauara award from Max's IRA | $54,000 |
| 26. | Unfair split of vehicles | $50,000 |
| 28. | Lauara's loans to herself of | $204,188 =10% interest $600,000 est. |
| 29. | All Max's attorney fees going forward to be decided. | |
| 30. | Costs to move | $25,000 |
| 31. | Misc. copies, transcripts… | $28,009    through August 24, 2022. |
| 32. | Lauara's false amended taxes | $28,498 |
| 33. | Awarded $70K motorhome twice | $140,000 |
| 34. | U.S. and District Court filings, costs and milage | $8,000 approx. |

Given the actions of Lauara, Mr. Meador, and the trial court judge, this Court is not precluded from ruling on them by the *Younger* of *Rooker-Feldman* doctrine. The Court should dismiss the decree and award Max the damages he requests.

## XI.    Injuries

105.    As a result of Defendants, Judge Alex Goble, Lauara Ann Lisk, Woodburn and Wedge and its attorneys, American Family Insurance, and their attorney Stewart Harman, Detective Brandt Deaton of the Sevier County Sheriff's Office, Sevier County Attorney Casey Jewkes and the defendants that preceded them in Cases Nos. 4:23-cv-00007 and 4:23-cv-00008, Max, at the age of 76, has lost his entire life savings and accumulated wealth.  Over the nearly six-year and highly stressful course of his divorce, Max's health has suffered significantly.  He has been hospitalized and treated for anxiety attacks, he suffers from depression, his COPD has been exacerbated. Max, his family, and friends are very concerned for his safety in Sevier County. Max's reputation has been irreparably damaged and will weigh heavily against him in future matters, including anything heard in the Sixth District Court.

//

PLEADING TITLE - 53

## XII.   Relief

WHEREFORE, Plaintiff demands judgment against Defendant(s) as follows:

1.   That all orders concerning Max, in all cases heard by or scheduled to be heard by Judge Goble be dismissed with prejudice;

2.   That the Divorce Decree be dismissed with prejudice for Mr. Meador's Rules 11 and 60 violations;

3.   All judgments entered against Max including interest are the responsibility of Defendant(s) to pay including the costs shown in **X. Damages**;

4.   For damaging Max's reputation and personal relationships in Sevier County the Sevier County Defendants, Judge Goble, County Attorney Casey Jewkes, and Detective Brandt Deaton be ordered to purchase Max's home at the value their witness, Lauara Lisk, set in her 2020 Financial Statement, plus pay Max the value of the water rights Max was forced to sell, and pay for Max for relocation out of Sevier County;

5.   That Defendants Lauara Ann Lisk, Adam Lisk, Ryan Lisk, and Shawn Meador be prosecuted by someone other than the Sixth Judicial District Court for stealing in excess of $2,055,000 from Max;

6.   That the Sevier County Sheriff's Office and the Sixth District Court be ordered to turn over all evidence Max provided them in complaints concerning Max's alleged poisoning by Lauara and that the evidence be furnished to outside law enforcement agency for investigation;

7.   That the Sixth District court be ordered to sign the Order Max prepared in the motorhome case;

8.      That an investigation be ordered into the funds laundered by Adam Lisk to determine if he used any of the funds to bribe defendants;

9.      For general compensatory damages in an amount to be determined at trial but not less than $10,450,000;

10.    Defendant(s) will provide Max with all the items he reported stolen from the motorhome which, American Family Insurance and Lauara falsely claimed to have reimbursed Max for but had not, and which were also denied Max when Judge Goble entered the "proposed judgment" without allowing argument;

11.    Defendant(s) are responsible for and are to pay all costs for having the motorhome transported to and from the manufacturer and repaired to Max's satisfaction;

12.    For all of Max's attorney fees to date and going forward;

13.    For special damages as shown at trial.

14.    For punitive damages against named individuals as may be allowed by law; Nevada allows for treble damages under Nevada's NRS 42.005. Defendants Lauara and her attorneys are responsible for treble damages, for the loans awarded to Max that were repaid to Lauara, $6,166,215.96, plus treble the other damages they caused as shown above;

15.    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

16.    For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

PLEADING TITLE - 55

17.    For such other and further relief as the Court deems just and proper.

**X.    Certificate of Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase costs of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the exhibits and supporting documentation referenced in this Complaint have previously, and have again, been furnished the Defendants on a flash drive with this Complaint; and (5) the complaint otherwise complies with the requirements of Rule 11.

**A.**    I am retired and attempt to travel to see family. I respectfully request to be allowed to provide and be provided pleadings and other documents by email.  I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case. DATED this 2th day of July 2023.

*/s/ Raymond Max Snyder*

_____

Raymond Max Snyder

PLEADING TITLE - 56

<u>EXHIBIT LOG</u>

1.  Exhibit AA, Elko October Hearing Brief.
2.  Exhibit A. Lauara's pre-Trial Statement
3.  Exhibit B. Divorce Decree
4.  Exhibit C. Order setting October 11, 202. Remand Hearing and Court of Appeals Order
5.  Appendix Volume XIX Index
6.  Appendix Volume XIX Part 1
7.  Appendix Volume XIX Part 2
8.  Appendix Volume XIX Part 3
9.  Appendix Volume XIX Part 4
10. Appendix Volume XIX Part 5
11. Appendix Volume XIX Part 6
12. Appendix Volume XIX Part 7
13. Appendix Volume XIX Part 8
14. Appendix Volume XIX Part 9
15. Appendix Volume XIX Part 9(a)
16. Appendix Volume XIX Part 9(b)
17. Appendix Volume XIX Part 9(c)
18. Exhibit BBB Police Report Case No. 2307-089, Plaintiff's Notice to Strike…
19. Exhibit BBB(1) Hearing Brief for October 11, 2023, Hearing…
20. Exhibit BBB(2) Pre-Trial Pleadings.
21. Exhibit BBB(3) Carol Lynn Properties bankruptcy.
22. Exhibit BBB(4) Old Mill Forestry bankruptcy.
23. Exhibit BBB(5) Opposition to Max's Rule 11 Motion and Motion to put Max on vexatious litigant list.
24. Exhibit BBB(6) Lauara's deposition March 26, 2019.
25. Exhibit BBB(7) Adam Lisk bankruptcy September 22, 2022.
26. Exhibit BBB(8) Letter from Mr. Meador threatening to come after half the loans to Adam Lisk awarded to Max by the divorce court.
27. Exhibit BBB(9) Old Mill Forestry Post Confirmation Report signature pg.
28. Notice to Submit for Decision Motion to Dismiss Divorce Decree…
29. Exhibit BBB(10) Notice of Change of Address.
30. Exhibit BBB(11) Divorce Trial transcripts day 3.
31. Exhibit BBB(12) Open.
32. Exhibit BBB(13) Bankruptcy Court notifications sent to Lauara.
33. Exhibit BBB(14) Adam Lisk laundering bankruptcy assets.
34. Exhibit CCC Plaintiff's Rule 11 Motion against Defendant Shawn B. Meador
35. Exhibit DDD Motion for Sanctions against Matthew Howell
36. Exhibit EEE Auto Insurance info
37. Exhibit FFF Defendant Lauara Ann Lisk's polygraph
38. Exhibit GGG. Writ of Execution
39. Exhibit HHH Lauara's Motion to be Relieved of answering Plaintiff's Pleadings
40. Exhibit III File Exhibit AA Elko Order hearing Brief and Complaint filed with the Sevier County Sheriff's Office and the 6th District Judicial Court and Sevier County Attorney.
41. Exhibit JJJ Rule 60 Decision Denying Motion for Relief From Judgment
42. Exhibit KKK Defendant Stewart Harmon declining to answer Rule 11 Motion
43. Exhibit LLL States 2nd Degree auto theft charge against Raymond Snyder
44. Exhibit MMM Confirmation that an operable vehicle was not stolen
45. Exhibit NNN Amortization schedule of loans to Adam Lisk.
46. Exhibit OOO Police reports including those they refused to provide.
47. Exhibit PPP scheduling hearing case No. 201600283 FS
48. Exhibit QQQ July 7 email to Jared Peterson with Taylor Affidavit, and Complaint to sheriff Exhibit MMM
49. RRR. Email to Jared Peterson July 13, 2023, with the transcripts of the tape and transcripts previously handed his in person of conversation with Lauara 12/2/2017.

PLEADING TITLE - 57

50. Exhibit SSS. The Sevier County Sheriff's Office Report on Max's Complaint No. 2307-089 (Exhibit BBB) to be provided if it is produced.
51. Exhibit TTT Meador's Motion to place Max on vexatious litigant list and Max's Rule 11 Motion for sanctions against Mr. Meador.
52. Exhibit TTT(1) Order Holding in Abeyance.
53. Exhibit TTT(2) FRCP Rule for Sanctions.
54. Exhibit UUU. Transcripts from March 31, 2021, hearing following the divorce.
55. Appendix Volume XX Part 3.
56. Exhibit VVV. Altered prenuptial agreement.
57. Exhibit WWW. Notice to the District Court that Judge Estes lacks jurisdiction.

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3       I certify that on the 27th day of July 2023, I served the foregoing document(s) described as follows: AMENDED COMPLAINT, along with all exhibits on a flash drive, by U.S. First Class Mail, to the Defendants listed below and addressed as follows,

4

5                    Judge: Alex Goble
                     Address                         Sixth Judicial District Court
6                                                    845 East 300 North
                                                     Richfield Utah 84701
7                                                    (435) 896-2700
8                                                    6thsevierdocs@utcourts.gov

9                    American Family Insurance
                     Address                          6000 American Parkway
10                                                     Madison, WI 53783
                                                       800-692-6326
11                                                     twelp@amfam.com

12                   Stewart Harman
                     Address                         Plant Christensen & Kanell
13                                                   250 E 200 S., Suite 340
                                                     Salt Lake City, UT 84111
14                                                   (801) 363-7611
15                                                   sharman@pckutah.com

16

17                   Lauara Ann Lisk
                     Address                         427 Mesa Street
18                                                   West Wendover NV 89883
                                                     (801) 891-7260
19                                                   Lauara@yahoo.com

20                   Detective Brandt Deaton,        Sevier County Sheriff's Office
21                   Address                         835 East 300 North, Suite 200
                                                     Richfield, Utah 84701
22                                                   (435) 896-2600

23                   Casey Jewkes,                   Sevier County Attorney
24                   Address                         Sevier County Attorney
                                                     835 E 300 N, Ste. 300
25                                                   Richfield, UT 84701
                                                     (435) 896-2675
26   //

27   //

28

PLEADING TITLE - 59

Shawn B. Meador
Address

Woodburn & Wedge
6100 Neil Rd.
PO Box 2311
Reno, NV 89505
(775) 688 3000
smeador@woodburnandwedge.com

Woodburn & Wedge
Address

Woodburn & Wedge
6100 Neil Rd.
PO Box 2311
Reno, NV 89505
(775) 688 3000

The undersigned affirms that this document contains no social security numbers.

Dated this 27th day of July 2023.

/s/ Raymond Max Snyder
Raymond Max Snyder

PLEADING TITLE - 60