# EXHIBIT VVV



*Western Forensic Document Examiner*
Certified Court-Qualified

**Kathy Carlson**
P.O. Box 782
Montrose, CO 81402

Colorado
970-275-6846
www.coloradohandwritingexpert.com

Utah
801-230-0831
www.utahhandwritingexpert.com



# Western Forensic Document Examiner

Certified Court-Qualified

**Kathy Carlson**
P.O. Box 782
Montrose, CO 81402

Colorado
970-275-6846
www.coloradohandwritingexpert.com

Utah
801-230-0831
www.utahhandwritingexpert.com



**Kathy Carlson**
*Western Forensic Document Examiner*
P.O. Box 782, Montrose, CO 81402
Office: 970-240-5950   Cell: 970-275-6846
Utah: 801-230-0831  Fax: 801-665-8585
www.coloradohandwritingexpert.com
www.utahhandwritingexpert.com
email: kscarlson1954@gmail.com



## Curriculum Vitae

Kathy Carlson, a Court Qualified, Certified Forensic Document Examiner, has studied handwriting examination and apprenticed under some of the leading Court Qualified Experts.

**Forensic Examination Provided For:**

Disputed documents or signatures including: Contracts, Loans, Warranty Deeds, Quitclaim Deeds, Real Estate Contracts, Deeds of Trust, Wills, Codicils, Holographic Wills, Beneficiaries, Income Tax Fraud, Poison Pen Letters, Anonymous Writing, Divorce Disputes, and Graffiti.

Investigation and analysis including: Questioned Signatures, Suspect Documents (Typed and Written), Suspect Alterations, Handwritten Numbers, and Indented Writing.

### Education:

*ITT Technical Institute – Denver, Colorado*
Electronic Engineering
December 1989 – January 1991

*Colorado Aero Tech – Broomfield, Colorado*
Testing, repairing and installing of radios and electronic devices of all types in different makes and models of aircraft.
August 1991 – November 1992

**International School of Forensic Document Examination – Los Angeles, California**
May 2009 – December 2010
A 2 year apprenticeship with leading authorities in the field of handwriting analysis and document examination.

**Training in handwriting and document examination includes:**
Handwriting identification and discrimination, signature comparison, techniques for distinguishing forged signatures, disguised handwriting, altered numbers, anonymous writing, factors that affect writing.

### Proficiency Testing:

Provided through International School of Forensic Document Examination included:
Ten test cases to work efficiently from start to finish without supervision.

### Forensic Conferences and Workshops:

National Association of Document Examiners (NADE)
Montreal, Canada
May 19 – 21, 2011

Association of Forensic Document Examiners (AFDE)
Louisville, KY
November 3 – 6, 2011

National Association of Forensic Document Examiners (NADE)
San Diego, CA
April 25 – 29, 2012

### Continued Education:

Katherine Koppenhaver, Board Certified Forensic Document Examiner, Teacher and Mentor
One hour weekly classes on various subjects.
May 23, 2011 – present

### Laboratory Equipment used for examinations include:

AmScope stereoscope with a digital camera attached .5 – 30X magnification, MiScope IR/UV Microscope 40 – 140X magnification, numerous other magnifying devices, light box, various measuring devices, HP Computer with a HP OfficeJet Pro copier, printer, scanner combination, various art programs installed on my computer, and a digital camera.

### Professional Memberships:

Member   American College of Forensic Examiners Inc. (ACFEI)
Member   American Society of Testing and Materials (ASTM)
         (Serving on Sub-committee E30.02)
Member   Colorado Society of Private Investigators (CSPI)

### Library:

Numerous forensic document examination books and other handwriting reference materials.

# Forensic Documentation Fee Schedule

### *Kathy Carlson – Western Forensic Document Examiner*

| | |
|---|---|
| Initial Consultation - 1/2 hour........................................ | **No Charge** |
| General Retainer Fee................................................ | $1200.00 |
| Verbal Opinion *(per questioned document or signature)* ........... | $395.00 |
| Upgrade from Verbal to Written *(already paid $395.00)*.. *(per letter)* | $195.00 |
| Written Opinion...................................................... | $590.00 |
| Laboratory Examination Time *(hourly)* ........................... | $150.00 |
| Designation Fee...................................................... | $590.00 |
| | |
| Attorney Consultation *(hourly rate)* .............................. | $150.00 |
| Deposition Time *(4 hour block minimum)* **Must be paid in advance** | $600.00 |

**Add $200.00 per hour thereafter + all travel expenses**

| | |
|---|---|
| Court Display Preparation *(hourly)* ............................... | $75.00 |
| Court Appearance *(per day)*. **(must be paid in full upon scheduling)** *($500 will be refunded upon cancellation or rescheduling of trial)* | $1,000.00 |
| | |
| On-Site Inspection of Document *(hourly, plus expenses)*........... | $200.00 |
| Photography *(plus cost of development)*........................... | $100.00 |
| Overnight Mail *($50 fee)*......................................... | $50.00 |
| Postage/Delivery 2nd Day *($30 fee)*......................... | $30.00 |
| Postage/Delivery Fee Ground *($25)*............................... | $25.00 |
| Postage/Delivery Fee *($5)*....................................... | $5.00 |

**Travel:**

| | |
|---|---|
| Driving *(hourly, plus $.50 per mile)*............................. | $50.00 |
| Flying *(hourly travel time, plus cost of ticket)*................. | $50.00 |
| Lodging *(per night or actual cost)* .............................. | $80.00 |
| Meals *(daily)*................................................... | $50.00 |

Any Rush Fee will be charged at 100% for weekends and holidays.
Any Rush Fee will be charged at 50% for regular work week.
Rush Fees are any case needed within 12-24 hours.

*We are not attorneys. We do not dispense legal advice. You should obtain legal advice from a suitable attorney.



**Kathy S. Carlson**
*Western Forensic Document Examiner*
P. O. Box 782    Montrose, CO 81402
Office Phone: 970-240-5950   Cell: 970-275-6846
Utah Phone: 801-230-0831
www.coloradohandwritingexpert.com
www.utahhandwritingexpert.com
email: kscarlson1954@gmail.com

May 3, 2012

Raymond M. Snyder
P.O. Box 69
Aurora, UT 84620

**Forensic Examination Requested:**

On April 20, 2012 I was contacted by Raymond Max Snyder and asked to analyze a four (4) page document to determine if any of the four pages of the document was of the same original created date of late September 2001. According to Mr. Snyder the first three pages had been altered, but page four (4) appeared to be genuine.

**Questioned Documents:**

**Q1**  Original – Page one of four PREMARITAL AGREEMENT signed by Raymond Max Snyder, dated Oct 2, 2001 (page 4) and Laura Ann Lisk (Laura A Lisk), dated Oct. 4, 2001 (page 4).

**Q2**  Original – Page two of four PREMARITAL AGREEMENT signed by Raymond Max Snyder, dated Oct 2, 2001 (page 4) and Laura Ann Lisk (Laura A Lisk), dated Oct. 4, 2001 (page 4).

**Q3**  Original – Page three of four PREMARITAL AGREEMENT signed by Raymond Max Snyder, dated Oct 2, 2001 (page 4) and Laura Ann Lisk (Laura A Lisk), dated Oct. 4, 2001 (page 4).

**Known Documents:**

**K1**  Original – Page four of four PREMARITAL AGREEMENT signed by Raymond Max Snyder, dated Oct 2, 2001 and Laura Ann Lisk (Laura A Lisk), dated Oct. 4, 2001.

**Examination results:**

I.   When examining K1, I have determined that the document is an original document, bearing original signatures and notaries, that is to say this document has not been duplicated or electronically copied. I also have determined this document was printed with an ink jet printer.

II. When examining Q1, I have determined that this page is an original document, that is to say this document has not been electronically copied, also printed with an ink jet printer. I examined the document to determine if the margins were offset in any way. The margins, spacing and font were the same as page four (4), also printed with an ink jet. The paper is of the same type, basic bonded paper with no color difference.

III. When examining Q2, I have determined that this page is an original document, that is to say this document has not been electronically copied, also printed with an ink jet printer. I examined the document to determine if the margins were offset in any way. The margins, spacing and font were the same as page four (4), also printed with an ink jet. The paper is of the same type, basic bonded paper with no color difference.

IV. When examining Q3, I have determined that this page is an original document, that is to say this document has not been electronically copied, also printed with an ink jet printer. I examined the document to determine if the margins were offset in any way. The margins, spacing and font were the same as page four (4), also printed with an ink jet. The paper is of the same type, basic bonded paper with no color difference.

### Observation:

On the left side, three quarters of the way down on Q1, Q2 and Q3 there is two streaks of smudging on each sheet that is not apparent on page four (4). I do not have an opinion as to what caused the smudging.

### More information requested:

I reported back to Mr. Snyder that there were very little differences in the documents other than the smudging. I asked him if he had a copy of the original to compare wording with. He did not. I asked him if he still had the computer he had created the documents on. He did not. He said that he found the floppy disk it was saved on. I requested to examine that disk.

### Examination Results:

On May 1, 2012 I accessed the properties of the floppy disk and determined the following:

I. General Tab;   "Created: Sunday, March 09, 2003, 7:09:13 AM"
                  "Modified: Sunday, March 09, 2003, 7:09:18 AM"
                  "Accessed: May 01, 2012"

   Please see Exhibit 3 for details.

    II.  Details Tab;   "Authors: Tammy"
                             "Revision number: 2"
                             "Company: Wendover Ambulance"
                             "Content created: 3/9/2003 9:09 AM"
                             "Date last saved: 3/9/2003 9:09 AM"
                             "Last printed: 9/29/2001 2:05 PM"
                             "Date created: 3/9/2003 7:09 AM"
                             "Date Modified: 3/9/2003 7:09 AM"

Please see Exhibit 4 and 5 for details.

Possible reasons for discrepancies as to why the floppy disk does not show a new print date is; if an individual modifying the document prints before saving, the original print date carries over from the first printed date. That is to say, the document was printed before the "Save As" option was applied, which kept the previous print date. Please see Exhibits 1 and 2 for further explanations.

**Recommendation:**

In order to find the actual changes made to this four (4) page document, it is my recommendation for Mr. Snyder to retain a Computer Forensic Analyst to examine the floppy disk.

**Conclusion:**

Based upon thorough analysis of these items, and from an application of accepted forensic document tools, principles and techniques it is this experts opinion that some portions of this four page document has been altered.

**Basis of Opinion:**

Handwriting identification is based on the principle that no two people write exactly the same way, and the principle that no one person writes exactly the same way twice, which is demonstrated through natural variation. Natural variation is a normal or usual deviation that is repeated in each individual's handwriting. Writing habits or individual characteristics distinguish one person's handwriting from another. The process of handwriting identification is the careful and systematic use of evidence that is common to most, if not all disciplines of forensic science is directed towards the identification of something unknown. This process is commonly referred to as the Law of ACE: Analysis, Comparison, and Evaluation. With these principles and procedures the evidence is evaluated, a side-by-side comparison is conducted between questioned and known standards and an opinion is rendered based upon scientific methods and principles.

Respectfully submitted,

*Kathy S. Carlson*
Kathy S. Carlson
Forensic Document Examiner

# PREMARITAL AGREEMENT

THIS PREMARITAL AGREEMENT is made and entered into by and between Raymond Max Snyder and Lauara Ann Lisk, hereinafter refereed to individually as "Max" and "Lauara", respectively.

W_I_T_N_E_S_S_E_T_H:

WHEREAS, the parties expect to marry each other sometime in the next month: and

WHEREAS, they have each acquired certain assets which they wish to retain as their sole and separate property after their marriage, and to make other provisions related to their marriage.

NOW, THEREFORE, in consideration of their mutual promises to marry and other good and valuable consideration, the parties herein agree as follows:

1. All real and personal property, wherever situated, owned by Max shall be deemed his sole and separate property. This separate property includes, without limitation, all of Max's right, title and interest in and to the property set forth on the attached Exhibit "A".

2. All real and personal property, wherever situated, owned by Lauara shall be deemed her sole and separate property. This separate property includes, without limitation, all of Lauara's right, title and interest in and to the property set forth on the attached Exhibit "B".

3. Unless otherwise expressly and specifically provided by written instrument signed by the respective separate property owner, all of the separate property of the parties, together with all of the income, rents, issues, profits, dividends, proceeds, appreciations, increases, and replacements, thereof, and all property purchased therewith, together with any bank accounts established from any of the forgoing, shall remain the sole and separate property of the parties respectively throughout, and at the dissolution of, their marriage, even if community efforts and labor of one or both parties contributes to the same. (Example: assume Max owns a rental home at the time of the marriage. After the marriage the rental remains in Max's name alone. All rent is Max's separate property. If Max sells the rental, the sale proceeds are his separate property and if he buys a duplex with the proceeds and takes title in his name alone, the duplex remains his separate property even though acquired during the marriage. If Max or Lauara use their own labor to improve or alter the rental or duplex, the rental and duplex remain entirely Max's separate property).



4. Unless otherwise expressly and specifically provided by written instrument signed by the parties, all real and personal property acquired by the parties during their marriage shall be their community property except:

    A. Income, profits, rents, dividends, proceeds and replacements of the parties' respective separate property, or any property purchased therewith.

    B. Property acquired by a gift or inheritance: and

    C. An award for personal injury damages.

5. Unless otherwise expressly and specifically provided by written instrument signed by the parties at the time, if separate funds are contributed to, or used for the benefit of, a party's respective separate property, the party not owning that item of separate property shall, at separation or dissolution of the marriage, or the death of the separate property owner, be entitled to the right of reimbursement of those separate funds contributed, without interest.

6. Unless otherwise expressly and specifically provided by written instrument signed by the parties at the time, if separate funds are contributed to, or used for the benefit of, community property or to pay a community debt, the same will be conclusively deemed to be a gift to the marital community and the owner of the separate funds will not be entitled to any reimbursement.

7. Unless otherwise expressly and specifically provided by written instrument signed by the parties at the time, if community funds, or the separate funds of one spouse, are used to pay a separate debt of the other spouse, the same will be conclusively deemed to be a gift to the spouse owing the separate debt and the other spouse will not be entitled to reimbursement.

8. Unless otherwise expressly and specifically provided by written instrument signed by the parties at the time, if either party allows the other party to be added to the title of an item of separate property, or its proceeds or replacement, in the event of separation or dissolution of the marriage, that asset will be conclusively deemed to remain the sole and separate property of the separate owner and not be transmuted into community property, or a joint tenancy: provided, however, that, in the event of the death of one of the parties, such asset will be conclusively deemed to be community property, tenancy in common or joint tenancy property, as the case may be.

Q 2

9. Unless otherwise expressly and specifically provided by written instrument signed by the parties at the time, if either party commingles separate funds with community or joint funds, or with the separate funds of the other party: (A) in the event of the death of one of the parties, the separate funds will conclusively lost its separate character even if it may be accurately traced: but (B) in the event of separation or dissolution of the marriage, each party shall receive his and her respective share to the extent that the sources of the contributions can be traced.

10. The mere fact that either party may join with the owner of any item of separate property in a contract, conveyance, deed of trust, encumbrance, mortgage, note or other instrument, shall be conclusively deemed to be an accommodation to the owner and not considered as an implied modification of this Agreement.

11. Each party will indemnify, and hold the other party harmless from, any and all debts incurred by such party prior to the marriage and any debts incurred after the marriage for the benefit of, or secured by, the party's separate property.

12. Each party does hereby renounce any and all rights of inheritance from the other party, including, without limitation, the right to inherit any portion of the separate property of the other party by intestate succession, provided, however, that this renunciation does not apply to, or affect, any inheritances or transfers:

    A. by virtue of the probate of a Will:

    B. by termination of a right or survivorship: or

    C. by an inheritance of community property by intestate succession: or

    D. by devise pursuant to a trust.

13. This Agreement will be governed by the law of the State of Nevada, and in particular the Nevada Uniform Premarital Agreement Act, Chapter 123A of the Nevada Revised Statutes, as amended or by the State laws of the state both reside in at the time of separation or divorce.

14. This Agreement may be amended or revoked only by a written agreement signed by the parties.

15. Each party executes this Agreement voluntarily, without coercion, threat, fraud or promise other than contained in this Agreement, and requests any court to enforce it as an intended, fair, and equitable Agreement.

Q3

16. Each party voluntarily and expressly waives all right of disclosure of property or financial obligations of the other party beyond his or her current knowledge of such property or financial obligations. The parties do not know the identify or value of all of each other's separate property and they do not need or want an itemized disclosure.

17. This Agreement is conditioned upon the solemnization of a marriage between the parties and will be effective at that time.

18. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

19. The Example in this Agreement is fictional and is intended to be an illustration of the principles and effect of this Agreement only. The Example is not based on the factual circumstances or assets of the parties.

IN WITNESS WHEREOF, the said parties have hereunto set their hands of the day and year first here in below written.

DATED: Oct, 2, 2001    Raymond Max Snyder

STATE OF Utah
COUNTY OF Sevier

This instrument was acknowledged before me on the day of 2nd day of October, 2001, by Raymond Max Snyder.

Mitzi Crane
NOTARY PUBLIC

NOTARY PUBLIC
MITZI CRANE
155 West Main
Salina, Utah 84654
My Commission Expires
January 27, 2003
STATE OF UTAH

---

DATED: Oct. 4, 2001    Lauara Ann Lisk

STATE OF Nevada
COUNTY OF Elko

This instrument was acknowledged before me on the 4 day of Oct, 2001, by Lauara Ann Lisk.

Tammy J. Brown
NOTARY PUBLIC

TAMMY J. BROWN
Notary Public
State of Nevada
Elko County, Nevada
94-2303-6
My appointment expires January 4, 2003.

K1

**Information researched regarding <u>Properties</u> on Floppy Disk**

## Hidden data and personal information from Office documents

*http://office.microsoft.com/en-us/help/remove-hidden-data-and-personal-information-from-office-documents-HA010037593.aspx*

Several types of hidden data and personal information can be saved in an Office document. This information might not be immediately visible when you view the document in an Office program, but it might be possible for other people to view or retrieve the information.

Hidden information can include the data that Office programs add to a file to enable you to collaborate on writing and editing a document with other people. It can also include information that you deliberately designate as hidden.

Office documents can contain the following types of hidden data and personal information:

- **Document properties and personal information**   Document properties, also known as metadata, include details about your document such as author, subject, and title. Document properties also include information that is automatically maintained by Office programs, such as the name of the person who most recently saved a document and the date when a document was created. If you used specific features, your document might also contain additional kinds of personally identifiable information (PII), such as e-mail headers, send-for-review information, routing slips, printer paths, and file path information for publishing Web pages.

Kathy Carlson
Forensic Document Examiner

**Exhibit 1**

Information researched regarding "Created", "Modified" and "Printed" differences

**The "Created" date and time of a document that you view in the Statistics tab differ from the "Created" date and time that you view in the General tab in Word**

http://support.microsoft.com/kb/922119

**How can the "Printed" date be a date that is earlier than the "Created" date in the Statistics tab?**

A document that was printed may be copied or re-saved to another location. Additionally, a document that was printed may be overwritten in the same location as the parent (original) document. In these cases, the newly copied or overwritten document has a more current "Created" date than the "Printed" date. The original "Printed" date carries over to the newly copied or overwritten document.

**How can a "Created" date from the Statistics tab be stamped with a date that is earlier than the "Created" date that is listed in the General tab?**

The "Created" date and time in the **Statistics** tab does not change unless the document is copied or unless someone performs a "Save As" operation on the **File** menu.

**How can a "Created" date from the General tab be stamped with a date that is later than the "Modified" date that is listed in the General tab?**

When the document is copied or is saved to a new location, a new file is created. This file is generated by a parent file that has the earlier "Modified" date. This parent file also has an earlier "Created" date.

When you copy or re-save a document, the "Created" date is updated in the **Statistics** tab and in the **General** tab. However, the "Modified" date is not updated.

Kathy Carlson
Forensic Document Examiner

**Exhibit 2**



Kathy Carlson
Forensic Document Examiner

Exhibit 3



Kathy Carlson
Forensic Document Examiner

Exhibit 4

